# Alexander *v.* Wheeler.

*Statutory Real Action in the nature of Ejectment.*

1. *Bill of exceptions ; when recital shows that all the evidence is set out.* A recital in a bill of exceptions, that "the foregoing evidence being before the jury," the court gave certain charges therein set out, shows with sufficient certainty, that the evidence recited in the bill was, in substance, all that was introduced on the trial.

2. *Ejectment ; plea of not guilty, a waiver of a disclaimer.*—In ejectment a plea of not guilty, being an admission of possession by the defendant, is, under our practice, a waiver of a disclaimer also filed by the defendant touching the same land.

3. *Same ; plea of statute of limitations also a waiver of a disclaimer.* For similar reasons, it is not permissible to set up by special plea, the statute of limitations under an adverse possession, and accompany it with a disclaimer, unless they are made applicable to entirely different parts of the premises sued for. In such case the disclaimer is also waived.

4. *Adverse possession ; what does not constitute.*—The mere possession of land will not constitute adverse possession, as the law presumes, in the absence of proof to the contrary, that every one in possession of land holds under the true or real owner.

5. *Same ; burden of proof.*—Adverse possession is a fact which must be proved, and the burden of proof is always cast upon him who interposes, and relies on it as a defense.

6. *Same ; what is.*—But an actual occupancy and substantial enclosure of land by a defendant, or by those under whom he derives title, or possession, accompanied by acts of ownership inconsistent with the ownership of another, is presumptively adverse possession, but is liable to be rebutted by proof to the contrary.

7. *Same ; when demand for possession, or notice to quit dispensed with.* Where one in possession of land, either as tenant, or under an executory contract of purchase, repudiates his contract by an assertion of hostile possession, this is such a wrongful act as determines his prior relationship, and dispenses with a demand for the possession by the plaintiff, or a notice from him to the tenant to quit.

8. *Same ; when it exists.*—If two proprietors of adjoining lands agree upon a dividing line between them, and erect a fence thereon, each occupying up to the fence, their possession is presumed to be adverse to each other, and, if continued for the length of time prescribed by the statute of limitations, it will ripen into a perfect title.

9. *Same.*—In such case, however, the intention with which possession is taken and held, must always constitute an essential consideration ; and hence, if a partition fence be extended by any one of two adjacent owners, so as to embrace within his enclosure a portion of his neighbor's

[Alexander v. Wheeler.]

land through mere inadvertence, or ignorance of the location of the real line, or for purposes of convenience, and with no intention to claim the part of his neighbor's land so enclosed, but intending merely to claim adversely only to the real or true boundary line, wherever it might be, such possession is not adverse to the owner.

10. *Same.*—But the rule is different, where the fence is believed to be the true line, and the claim of ownership is up to the fence as located, although the established boundary line is erroneous, and the claim of title is the result of the mistake. In such case there is a clear intention to claim to the fence as the true line, and the possession does not originate in an admitted possibility of mistake.

11. *Ejectment; design of the statute of limitations.*—One of the chief designs of the statute of limitations is to compose controversies growing out of mistakes and errors of description, which tend so greatly to the disturbance of land titles; and knowledge by one in possession claiming title, that his title is defective, does not generally prevent such possession from being adverse, the test being the actual claim, and not the *bona fides* of it.

12. *Adverse possession; when possession at first permissive, what necessary to constitute.*—Where the entry upon land is merely permissive, being allowed under a mere license from the true owner as matter of favor, possession under it can become adverse only by clear, positive, open and continuous assertion of title, hostile to the true owner, and actually or constructively brought to his knowledge.

13. *Same.*—Hence, if there be parol exchange of lands for purposes of mutual tenancy, the presumption is that the possession is not adverse, but permissive; but even in such case, if the proof show a hostile claim of title by either of the occupants, possession for ten years under such claim may mature into a good title.

14. *Proposition of compromise of pending suit inadmissible.*—The testimony of a witness to the effect, that after the commencement of a suit in ejectment the plaintiff and defendant mutually agreed that he might survey a disputed boundary line, and that each party would abide by the result of such survey, and pay half the costs, tending merely to show, as it does, a proposition of compromise, is inadmissible.

15. *Pleadings to be construed by the court, not by the jury; reference to them by the jury.*—The court should construe the pleadings in a cause, as matter of law, and not submit their construction to the jury; but pleadings being explained by the court, neither party can be prejudiced by any reference to them by the jury during their deliberations, for the purpose of refreshing their memory as to any fact to which they were pertinent.

16. *Ejectment; right of recovery not affected by parol agreement.*—In ejectment it is not necessary for the plaintiff to offer to rescind a parol exchange of lands made between those under whom he and the defendant respectively hold, as a condition precedent to the commencement of his suit. In such case, the plaintiff having the legal title to the land sued for, and his claim thereto not being barred, he is entiled to recover, notwithstanding such parol agreement.

17. *Judgments and verdicts; what essential to their validity.*—Every judgment of a court of law must either be perfect in itself, or capable of being made perfect by reference to the pleadings, or to the papers on file in the cause, or else to other pertinent entries on the court docket; and, in like manner, verdicts of juries can not be supplemented by intendment, or by reference to mere exstrinsic facts.

18. *Verdict of jury; when void for uncertainty.*—While a general verdict in favor of the plaintiff in an action of ejectment, for the lands described in the complaint, is sufficient; yet, when the verdict is for a part only of such lands, or the finding has no reference to the description given in the pleadings, the boundaries of land recovered must be

[Alexander v. Wheeler.]

·designated with reasonable certainty, so as to enable the court to pró-nounce judgment thereon. Otherwise it is void for uncertainty, and can not be sustained.

19. *Same.*—A verdict in favor of the plaintiff for "the land running to Fergusson and Allen line," there being nothing in the pleadings to aid the description, is void for uncertainty, and can nor support a judg-ment of recovery.

APPEAL from Cleburne Circuit Court.

Tried before Hon. WM. L. WHITLOCK.

This was a statutory real action in the nature of ejectment, brought by Calvin M. Wheeler against George W. and Anna Alexander, and was commenced on the 19th February, 1878. The land described in the complaint is the west half of the north-east quarter of section 10, township 13, range 11. The pleadings are sufficiently stated in the opinion. On the trial, as shown by the bill of exceptions, "the plaintiff introdued a patent from the United States to Arthur Alexander, and deed from said Alexander to plaintiff to the land sued for, and intro-·duced evidence tending to show that defendants were in posses-sion, at the commencement of this suit, of the following por-tion of said land, to-wit: A strip about four rods wide along the entire western boundary line, and of a nook in the north-east corner of the land sued for, and a small strip on the north and south ends consisting of about one-fourth of an acre each ; and his damages and rents.

"One of the controverted points was as to where the true western boundary line of the land sued for was. The defend-.ants introduced testimony tending to show that Mathew Alex-ander, the late husband of the defendant, Annie, and father of the defendant, George W. Alexander, owned and was in pos-session of the 80 acre tract lying immediately west of the land .sued for, in the year 1844 ; that in said year, he had said tract surveyed and platted by John Lindsey, the then county survey-·or, and in said survey he ran and marked out the line running north and south to the north boundary line of the section be-tween. the land sued for and the 80 acre tract above named ; that soon thereafter a fence was put on said line from the cen-·tre of said section, as established by the survey, running north nearly a quarter of a mile ; and that it was then agreed between .said Mathew Alexander and Arthur Alexander, who was the father of the said Mathew, and who was then the owner, and in possession of the land sued for, and who is the immediate vendor of the plaintiff, that the said fence should be the divid-ing line between them. The defendant also introduced proof ·tending to show, that they and the said Mathew Alexander, under whom they claimed, had been in possession of the land, .and claiming up to said fence adversely from the time it was

[Alexander v. Wheeler.]

placed there as aforesaid until the present time. The plaintiff introduced testimony tending to show that said possession was not adverse, and that the true western boundary of the land sued for, was not where said fence was, but some four rods west of it. The foregoing evidence being before the jury, the plaintiff introduced W. P. Harwell, and proposed to prove by him that, after the commencement of this suit, the plaintiff and defendants agreed that the said Harwell might survey the lines in controversy, and that each party would abide by the survey, and pay half the expenses thereof, that each party paid half the expenses, and that the agreement was verbal." To this evidence the defendants objected, but their objection was overruled, and the plaintiffs were allowed to make the offered proof, and they excepted.

"The defendant, George W. Alexander, testified, that by an agreement with the plaintiff, the fence on the north end of the line running north and south between plaintiff and defendant, a quarter of a mile in length, between said tracts, had been moved the width of a fence row on the plaintiff's side, for the purpose of cultivating the fence row, the fence at that point being a dividing fence between plaintiff and defendants; and that plaintiff, in compensation therefor, was to move the fence on the south end of the tract sued for a like distance, for the like purpose, on defendants' land, that also being a dividing line between them, defendants owning the land south; and the fence, as it now stands, on the north end of said line, was the width of said fence row on the plaintiff's side of the line, and from the old fence inside of defendant's field; that by agreement with the plaintiff, the latter was· to keep in repair the south half of said fence, and defendants were to keep in repair the north half of said fence; and that he moved said fence the width of said fence row for the purpose of repairing it. This fence row was all the land belonging to the plaintiff, that defendants admitted they were in possession of (and only in the manner above stated), except as may be shown by the pleadings. The defendants also introduced evidence tending to show, that a fence was put upon said line so surveyed by Lindsey in 1844, immediately after said survey, on the south end of it, for a quarter of a mile or more, and on the north end, where the old fence was first put, except as moved for the fence row as above stated, and that the fence intermediate connecting the two, is on a· direct line, and has been built there for more than ten years before the commencement of this suit. There was also proof by the defendants tending to show, that these defendants and those under whom they claim, have claimed up to the fence on the south end aforesaid, as the true line, and

[Alexander v. Wheeler.]

holding the same adversely for more than ten years before the commencement of this suit, or demand of possession.

" The plaintiff introduced evidence tending to show, that there was no agreement between the plaintiff's vendor and defendants' ancestor as to the true line between them on the south end of said line, or anywhere else on said line; that the line run by Lindsey between the western boundary of the tract sued for and the defendants' land, was incorrect, and that the true line was some four rods all along the line further west; and that the plaintiff and his vendor had been in possession of, and claiming as their own, all the lands on the east side of the said fence, on the south end of said line, for more than ten years before the commencement of this suit.

" The defendants also introduced evidence tending to show that the plaintiff, in 1865, or 1866, made a verbal exchange of certain small pieces of land with Mathew Alexander, defendants' ancestor, and each then took possession of that received from the other; that by and under said exchange said Mathew took possession of a small nook or piece consisting of one acre, more or less, in the northeast corner of the tract sued for; that plaintiff then went into possession of the lands then received from said Alexander, and cleared and fenced one of the pieces, and has been in possession of the same until since the commencement of this suit; that said Alexander enclosed and cultivated said acre, and he and these defendants have been in possession of the same, claiming it under said exchange, from that time to the present. There was no proof tending to show, that any demand had been made on the defendant, Mrs. Annie Alexander, for the possession of said one acre before the commencement of this suit," although there was proof tending to show that the plaintiff, before suit brought, had demanded of G. W. Alexander the entire 80 acre tract, in which the one acre was situate. The defendants also showed that they claimed under the will of the said Mathew Alexander.

" The foregoing evidence being before the jury the plaintiff requested the court to give in writing the following charges," to-wit: 1. " That a possession, to be adverse, must be knowingly and designedly taken and held, and a possession through accident, or ignorance of the dividing line between adjoining proprietors, is not sufficient to constitute adverse possession." 2. That if the jury " believe from the evidence, that the defendants made an agreement with the plaintiff to have the lines of the land ascertained by a survey, the jury may look to such agreement, in connection with all the other evidence in the case, in determining whether the possession of the defendants has been adverse or not." 3. " That if the jury believe the evidence, the plaintiff is entitled to recover that part of the

[Alexander v. Wheeler.]

land sued for, that is in the possession of the defendants, and to which the defendants set up no claim." 5. " That a possession of land by the permission of the owner is not adverse, and a possession under a mere exchange of land for convenience, is not adverse to the owner." 6. " That if the jury believe from the evidence, that the defendants, at the time of the commencement of this suit, were in possession of any of the lands sued for, the possession of which is denied in the plea of the defendants, the plaintiff is entitled to recover such land." 6. " The burden of proof is on the defendants to show any agreement as to the line alleged by them to have been made by Arthur Alexander and Mathew Alexander." 7. " That it is the duty of the jury to read the pleas filed by the defendants to determine what lands the defendants deny being in possession of." 8. " The law never presumes adverse possession, neither can the jury presume it; but the burden is upon the defendants to show it by the evidence in the case." 9. " The law presumes that every one in possession of land holds possession under the true owner." 10. " The mere possession of land will not constitute adverse possesssion."

To the giving of each of these charges the defendants excepted; and they then asked the court to give to the jury the following charges, each of which the court refused to give, and they excepted, to-wit : 1. " If the jury believe from the evidence that Lindsey surveyed one of the lines in controversy in 1844, and the fence was put on said line, and they believe that the present fence is on the same row, and that these defendants and those under whom they claim, have been claiming up to said fence line and holding the same adversely for more than ten years before the commencement of this suit, then the plaintiff can not recover any lands so occupied and claimed, notwithstanding the parties may never have agreed on it as the true line." 2. " If the jury believe from the evidence that Lindsey made a survey of the land for Mathew Alexander, and that the fence was put on the line surveyed by Lindsey, and that Mathew Alexander and those claiming under him have been in possession of, and claiming land up to the fence as the true line, for more than ten years before the bringing of this suit, or the demand of possession, then the plaintiff can not recover any land so in possession and claimed." 3. " If one party have land surveyed, and a fence is put upon the line, and each holds and claims adversely up to the line so established for more than ten years before the commencement of this suit, then it is binding on the parties and their vendees, although the surveyor did make a mistake in the survey." 5. " If the jury believe from the evidence that Mathew Alexander and C. M. Wheeler did exchange certain small tracts or parcels of land, indefinitely, to

22

be used and cultivated by each other, the plaintiff must offer to rescind said contract, or abandon said pieces so received of Alexander before the commencement of this suit, in order to entitle him to recover the lands so exchanged by him to Alexander."

The jury returned a verdict for the plaintiff as shown in the opinion, on which judgment was rendered in his favor for the recovery of all the land described in the complaint. The defendants then moved to set aside the verdict and to arrest the judgment of the court, on the ground that the verdict was void for uncertainty; but the court overruled their motion, and they excepted.

The rulings of the Circuit Court above noted are here assigned as error.

AIKEN & BURTON and J. B. MARTIN, for appellant.

S. P. BARBER, SMITH & SMITH, and ELLIS & MARTIN, contra.

SOMERVILLE, J.—The recital in the bill of exceptions in this case, that "the foregoing evidence being before the jury," the court gave certain charges which appear in the record, shows with sufficient certainty that the evidence recited is in substance all that was introduced. It was so held in *Walker v. Carroll*, 65 Ala. 61, overruling previous decisions which held the contrary.

The present action is one under the statute, in the nature of ejectment. The chief contention was as to the true western *boundary line* of the land for which suit was brought, the plaintiff contending that a certain strip in dispute, but a few feet wide, was a part of the west half of the northeast quarter of a section described in his complaint, and the defendants that it was included in the east half of the northwest quarter of the same section. The pleadings raise a further contention as to small parcel of about *one acre* in the northeast corner of the tract sued for by the plaintiff.

Some confusion is apparent in the whole conduct of the case in the court below, by reason of the conflicting character of the pleas interposed by the defendants. In the first place, there is an admission of possession to the extent of the *one acre* parcel, and a plea of "not guilty" as to the alleged unlawful withholding of it. Next follows a *disclaimer*, denying possession of any other part of the lands for which suit is brought. Then follow two pleas setting up the statute of limitations, alleging *adverse possession*, under claim of title, respectively, for ten and twenty years, the benefit of which could have been obtained under the "general issue," if pleaded to the whole action.

[Alexander v. Wheeler.]

A plea of not guilty would be an admission of possession by the defendants, being equivalent to the consent rule at common law, and is, therefore, clearly repugnant to, and inconsistent with a plea of disclaimer. The interposition of the plea of not guilty would, under our practice, as held by this court, be a waiver of the plea of disclaimer. It would be an effort to admit and deny possession both in the same breath, which is not permissible under the consent rule, as established in the 24th Rule of Practice in the Circuit Courts.—*Bernstein v. Humes,* 60 Ala. 582 ; Code of 1876, §§ 2962–3.

In like manner, and for similar reasons, it is not permissible to set up, by special plea, the statute of limitations under an adverse possession, and accompany it with a plea of disclaimer, unless the two pleas are made applicable to entirely different parts of the premises in controversy. The plea of disclaimer was, under this principle, waived by the defendants, and their admission of adverse possession must be construed to relate to the entire premises claimed by the plaintiff.

Many of the charges, given by the court below, involve mere fundamental principles of the most familiar character. Among them are, that the mere possession of land will not constitute adverse possession, and that the law presumes that every one in possession, in the absence of proof to the contrary, holds possession of land under the true or real owner.

It is equally well established, that adverse possession is a fact which must be proved, and the burden is always cast upon him who interposes and relies upon it as a defense. But an actual occupancy and substantial enclosure of land by a defendant, or by those under whom he derives title or possession, accompained by acts of ownership inconsistent with the fact of ownership in another, is presumptively adverse possession, liable to be rebutted by countervailing proof to the contrary.—*Jackson v. Woodruff,* (1 Cow. 276), 13 Amer. Dec. 525.

This case, under the pleadings, was not one in which previous demand of possession was requisite in order to maintain the action. Where one in possession of land, either as tenant or under an executory contract of purchase, repudiates his contract by an assertion of hostile possession, it is such a wrongful act as determines his prior relationship, and dispenses with demand of possession by the plaintiff, or notice from him to the tenant to quit. The law does not exact a useless procedure. *Right v. Beard,* 13 East. 210 ; *Doe v. Jackson,* 1 Barn. & Cres. 448 ; *Prentice v. Wilson,* 14 Ill. 91.

The matter of main controversy, in this case, relates to the principles of law bearing on the real and the assumed boundary line between the rival contestants for the ownership of the intermediate disputed tract.

[Alexander v. Wheeler.]

We take it to be settled, in this regard, that if two proprietors of adjoining lands *agree* upon a dividing line between them, and erect a partition fence upon such assumed boundary line, each occupying up to the fence, their possession is mutually presumed to be adverse to each other, and if continued for the length of time prescribed by the statute of limitations, will ripen into a perfect title.—*Brown v. Cockerell*, 33 Ala. 38; *Rider v. Maul*, 46 Penn. St. 376; *Burrell v. Burrell*, 11 Mass. 294; 3 Wait's Act. and Def. 103.

The *quo animo*, or intention with which possession is taken and held by a defendant, must always constitute an essential consideration. Hence, if a partition fence be extended by one of two adjacent owners, so as to. embrace within his enclosure a portion of his neighbor's land, through mere inadvertence, or ignorance of the location of the real line, or for purposes of convenience, and with no intention to claim such extended area, but *intending to claim adversely only to the real or true boundary line*, wherever it might be, such possession would not be adverse or hostile to the true owner. There can be no adverse possession without a coincident intention to claim title.—*Brown v. Cockerell*, 33 Ala. 38. If the claim, in other words, is not up to the partition fence as extended, but only to the true line, there would be no adverse holding of the new enclosure, but only up to the true dividing line.—*Burrell v. Burrell*, 11 Mass. 294.

But the rule is different where the fence is believed to be the true line, and the claim of ownership is up to the fence as located, even though the established division line is *erroneous*, and the claim of title was the result of the mistake. In such case there is a clear intention to claim to the fence *as the true line*, and the possession does not originate in an admitted possibility of mistake. One of the chief designs of the statute of limitations is to compose controversies growing out of mistakes and errors of this description, which tend so greatly to the disturbance of land titles.—*Burdick v. Heivly*, 23 Iowa, 511; Tyler on Eject. 138; *Crary v. Goodman*, 22 N. Y. 170; *Hunter v. Chrisman*, 6 B. Monr. 463; *Enfield v. Day*, 7 N. H. 457. Knowledge, however, by one in possession claiming title, that his title is defective, does not generally prevent such possession from being regarded as adverse. The test is the actual claim, and not the *bona fides* of it.—*Riggs v. Fuller*, 54 Ala. 141; *Manly v. Turnipseed*, 37 Ala. 522.

In all cases where the evidence shows that the entry of the defendant upon the premises in dispute is merely *permissive* in its inception, being allowed under a mere license from the true owner as a matter of favor, possession under it can become adverse only by clear, positive, open and continuous

assertion of title, hostile to such owner, and actually or constructively brought to his knowledge.—*Collins v. Johnson*, 57 Ala. 304; *Medford v. Pratt*, 4 Pick. 222; *Kirk v. Smith*, 9 Wheat. 241. Presumptively, therefore, if there be a parol exchange of lands for purposes of mutual tenancy, the possession would not be adverse, but permissive. But even in such cases, if the proof show a hostile claim of title by either of the occupants, possession for ten years under such claim may mature into a good title, under the principles above enumerated. But the statute of limitations will not run, if there be, during such period of time, a recognition of the real owner's title, because the possession then ceases to be adverse. The burden of proving the possession adverse, however, as above stated, is always upon the person alleging it.—*Collins v. Johnson*, 57 Ala. 304.

Under these principles, charges numbered 5, 8, 9, 10, and the *second* charge numbered 6, were properly given by the court below; and charge numbered 3, requested by the appellants, should have been given as requested.

Charges 1 and 2, requested by appellants, were properly refused, because they ignore the principle that mere adverse possession, unless continuous, open and notorious, will not confer title, or unless being uninterrupted it is otherwise brought home to the knowledge of the true owner.

The testimony of the witness, Howell, was improperly admitted, showing that, after the commencement of the suit, the plaintiff and the defendant agreed that he might survey the disputed boundary line, and that each party would abide by the result of such survey, and pay half the costs. This, we think, in view of the pending litigation, must be taken as a mere proposition of compromise, and can not operate as an admission of right prejudicial to either side. The policy of the law favors amicable adjustments of litigation, and therefore protects negotiations made *bona fide* for their settlement, regarding them in the nature of confidential overtures of pacification. The modern and more honest doctrine, we think, does not require that such propositions should be made expressly as "without prejudice," in order to exclude them from being introduced in evidence as an implied admission of liability.—2 Whart. Ev. § 1090. The admission allowed to go to the jury in *Brown v. Cockerell, supra*, was not of this character. Such an agreement, being by parol and relating to lands, would, of course, be offensive to the statute of frauds, as a mere agreement.

The court should have construed the pleadings as matter of law, and should not have submitted their construction to the jury, as the seventh charge given might be interpreted to signify. The pleadings being explained by the court, no one could be prejudiced by any reference being made to them by the jury

[Alexander v. Wheeler.]

during their deliberations, for the purpose of refreshing their memory as to any fact to which these papers were pertinent.

There was no need on the part of the plaintiff of any offer to rescind any *parol* exchange of lands made between those under whom they respectively held, as a condition precedent to the commencement of this suit. If the plaintiff had the legal title to the lands sued for, and the claim on his part was not barred by lapse of time, he would be entitled to recover, in the absence of a valid agreement by which the right of possession had been parted with or relinquished.

The charges, other than those above noticed, are either abstract, as being unsupported by the evidence set out in the bill of exceptions, or are misleading, as being susceptible of easy misinterpretation, or they are unnecessary to be considered in view of the waiver of the plea of disclaimer by the defendants.

But one other matter remains for our consideration. The verdict of the jury is in the following words: "We, the jury, find for the plaintiff *the land running to the Fergusson and Allen line*, and assess his damages at thirty dollars." The judgment follows this verdict in the description of the land. It is urged that both the verdict and the judgment are void for uncertainty. We are of opinion that the point is well taken.

The rule of law is, that every judgment of a court of justice must either be perfect in itself, or capable of being made perfect by reference to the pleadings, or to the papers on file in the cause, or else to other pertinent entries on the court docket. Freeman on Judg. § 54; *Dickerson v. Walker*, 1 Ala. 48; *McClellan v. Cornwell*, 2 Cald. 298.

So verdicts, in like manner, can not be supplemented by intendment, or by reference to mere extrinsic facts.—*Sewall v. Glidden*, 1 Ala. 52; *Clay v. The State*, 43 Ala. 350.

A general verdict, it is true, in favor of the plaintiff, for the lands described in the complaint, has always been held to be good in actions of ejectment.—Tyler on Eject. 580; *Chapman v. Holding*, 60 Ala. 522. But where the verdict is special, as being for a part only of the premises, or the finding has no reference to the description given in the pleadings, the boundaries of the land recovered must be designated with reasonable certainty, such as to enable the court to award judgment on it, otherwise it can not be sustained, being void for uncertainty. Code of 1876, § 2967; Tyler on Eject. 580, 735, 821; *Sturdevant v. Murrell*, 8 Port. 317; *Bennett v. Morris*, 9 Port. 171.

The verdict of the jury, in this case, fails to conform to these requirements, and is too defective to support any judgment.

The court below erred in refusing to vacate both the verdict and judgment on motion of the appellant, as also in its rulings as above particularly specified. Its judgment must, therefore,

[Hooper v. Armstrong.]

be reversed and the cause remanded, which is ordered accordingly.