JOHN E. EDWARDS, *Appellee,* v. WILLIAM H. FLEMING
*et ux., Appellants.*

No. 16,713.

SYLLABUS BY THE COURT.

1. ADVERSE POSSESSION — *Mistake as to Boundary — Intention.*
The real test as to whether or not possession of real estate
beyond the true boundary line will be held adverse is the in-
tention with which the party takes and holds the possession.
It is not merely the existence of a mistake, but the presence
or absence of the requisite intention to claim title, that fixes
the character of the entry and determines whether the pos-
session is adverse.

2. —————— *Presumptions Arising from Possession of Real Estate.*
Among the presumptions which usually obtain with respect
to the possession of real estate are these: (1) It is presumed
that the possession is in subordination to the true title; (2)
where one enters into possession under a deed it is presumed
that he claims only the title given him by his deed and that
his possession is restricted to the premises granted.

3. —————— *Mistake as to Boundary—Intention.*   Where a fence is
believed to be the true boundary and the claim of ownership
is up to the fence as located, if the intent to claim title exists
only on the condition that the fence is on the true line the
intention is not absolute, but conditional, and the possession
is not adverse. (*Scott v. Williams,* 74 Kan. 448.) If, however,
in such a case there is a clear intention to claim the land up
to the fence, whether it be the correct boundary or not, the
possession will be held adverse.

4. ESTOPPEL—*Acquiescence in Possession of Real Estate—In-
tention—Adverse Possession.*   In an action to quiet title the
plaintiff claimed under deeds to himself and his immediate
grantor, executed by the defendants, which described the land
conveyed as bounded on the south by a hedge fence. The
plaintiff and his grantor had been in the actual possession of
the land claiming title up to the fence for more than fifteen
years, during which time the defendants continued to own
the land adjoining on the south, but made no claim to land
north of the hedge fence. *Held,* that the evidence warranted
a finding of adverse possession by the plaintiff, intention on
the part of the defendants to fix the fence as the boundary,
and acquiescence on their part sufficient to bar them from
claiming that the fence was not the true boundary.

5. SURVEYS AND BOUNDARIES—*Quieting Title—Title by Deed,. Adverse Possession, and Estoppel.* Where it appears that the plaintiff has acquired title by deed, adverse possession, and acquiescence in the boundary by the defendants, a survey afterward made at the request of the defendants, under the provisions of section 2275 of the General Statutes of 1909, fixing a different boundary to the tract claimed by the plaintiff, furnishes no defense to an action to quiet plaintiff's title.

6. —— *Establishment of Boundaries — Change of Title.* A statutory survey may establish the permanent boundaries between two tracts of land, but can not change the title to the land.

Appeal from Lyon district court. Opinion filed January 7, 1911. Affirmed.

*L. B. Kellogg, John Madden,* and *C. M. Kellogg,* for the appellants.

*J. Jay Buck,* and *S. S. Spencer,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: Edwards sued the Flemings to quiet his title to a tract of land of about ten acres. The defendants formerly owned the land, and, in 1891, conveyed the same to Floyd E. Fleming by warranty deed,. which described the tract as follows:

"Commencing twenty (20) rods west of the northeast corner of northeast quarter (¼) of section thirty-three (33), township (20), range thirteen (13), thence west sixty (60) rods, thence south twenty-six rods. to hedge fence, thence east sixty (60) rods, thence north to place of beginning, containing ten (10) acres. more or less."

The petition alleged that Floyd E. Fleming was in possession of the land under this conveyance until 1908,. when he conveyed by the same description to the plaintiff, and that the plaintiff has been in possession of the land ever since the conveyance to him. There was the further allegation that both deeds made the "hedge fence" an artificial boundary and a part of the description of the land conveyed. The plaintiff also alleged

that he and his immediate grantor had been in the open, notorious, exclusive and adverse possession of the tract of land, and the whole thereof, up to the hedge fence on the south, for more than fifteen years preceding the beginning of the action; and, further, that a short time before the action was brought the defendants had entered upon the tract of land claimed by the plaintiff and moved a wire fence, and are now claiming that the hedge fence is not the true boundary on the south, and claim to own the land that lies immediately north thereof.

The defendants in their answer set up a survey made by the county surveyor on the 18th day of January, 1908, at their request, and upon due notice to the plaintiff, as required by the statute, and alleged that on the day appointed the plaintiff personally appeared at the time and place of survey; that the county surveyor duly surveyed and established the corners and boundaries between the lands of the defendants and the lands of the plaintiff, and that the report and plat of the survey so made were thereafter duly filed in the office of the county surveyor, and that the survey was acquiesced in both by the plaintiff and the defendants, and that no appeal therefrom was ever taken. To the answer there was attached a copy of the surveyor's report, and affirmative relief was asked declaring the boundaries to be those established by the survey.

In his reply the plaintiff alleged that there were no disputed corners or boundaries between the lands of the parties and there was no occasion for any survey. The reply also alleged that the notice served upon him by the county surveyor was insufficient because, in describing the land to be surveyed, it did not follow the description in the deeds under which he held, and that there were a number of other irregularities in the survey.

At the conclusion of the evidence the court made a number of special findings, and found generally for the

plaintiff and against the defendants. A decree was entered quieting title in the plaintiff to the disputed tract of land. The defendants appeal.

Among the special findings are: That the plaintiff and his immediate grantor had been in the open, notorious, exclusive and adverse possession of the tract of land claimed by him, and the whole thereof, for more than fifteen years, and that when the defendants conveyed the land in question to Floyd E. Fleming they intended to, and did, convey to him a certain tract of land inclosed by four certain fences, to wit, a hedge fence on the north, a hedge fence on the west, a hedge fence on the south, and a post-and-wire fence extending from the hedge fence on the south and along the entire east side to the hedge fence on the north, and that the fences had remained substantially located in the same places from the time of their being built until some time during the month of March, 1909, and after the conveyance to the plaintiff.

The defendants offered testimony to show that the possession had not been adverse. But there was little conflict in the testimony. Defendant William H. Fleming testified that the hedge fence on the south was planted more than thirty years ago, not for the purpose of fixing any boundary line, but in order to fence off a pasture used by his father, who at that time owned the whole eighty acres. The plaintiff lived within a few rods of the land for forty-two years. He testified that he furnished the plants for the west and south hedge fences, and helped the old gentleman, Fleming, then the owner, to set them out; that twenty-five years ago a post-and-wire fence was built along the whole east side, inclosing the entire field; that the fences were on the same line when he bought the land in 1908.

Floyd E. Fleming testified that he had owned this tract of land; that he bought it from his brother, defendant William H. Fleming, and sold all he owned to the plaintiff; that he knew the boundaries of the tract; that it

Edwards v. Fleming.

was fenced on the east with a wire fence, and on the north, west and south by hedge fences; that during the seventeen years in which he occupied the land the defendants, never to his knowledge, claimed to own any of the land inside these fences. There was testimony of a witness who had rented the land as the "Floyd E. Fleming tract," and who occupied it up to the south hedge, that the defendants never claimed to own any of the land within the fences until after the conveyance to the plaintiff. The findings of the court are fully sustained by a preponderance of the evidence. The following is a plat of the survey upon which the defendants rely:

The plaintiff claims the land bounded on the north by the public road and on the west, south and east by the dotted lines. The defendants own the land south

42—83 KAN.

and east of the plaintiff's land, and the boundaries fixed by the surveyor gave to the plaintiff only the land included within the straight lines, amounting to 9.75 acres, which is 3.75 acres less than the plaintiff claims. The controversy, so far as the defendants are concerned, is over the location of the south and east boundaries of the tract.

The defendants rest mainly upon the conclusiveness of the survey under section 2275 of the General Statutes of 1909 (Laws 1891, ch. 89, § 10), which provides that "the corners and boundaries established in any survey . . . where no appeal is taken from the surveyor's report . . . shall be held and considered as permanently established, and shall not thereafter be changed."

Aside from the plaintiff's claim that the survey was irregular and void, his main contention is that he pleaded and proved his title by a deed and adverse possession for over fifteen years, and that the only defense offered to the trespass of the defendants was the record of the survey. In answer to this contention the defendants insist that the possession of the plaintiff and his immediate grantor was through a misapprehension of the true boundary lines, and that the possession was therefore not adverse. The defendants rely upon the following decisions: *Winn v. Abeles,* 35 Kan. 85; *Swarz v. Ramala,* 63 Kan. 633; *Shanline v. Wiltsie,* 70 Kan. 177; *Scott v. Williams,* 74 Kan. 448; *Crawford v. Hebrew,* 78 Kan. 401. These cases, however, recognize the doctrine that the character of the possession depends upon the intent with which it is taken and held. The reason why possession held under a mistake as to the true location of the boundary line is not adverse is stated to be, in *Shanline v. Wiltsie,* supra (p. 182), cited with approval in *Scott v. Williams,* supra, "that there is no intention on the part of the occupant to exercise, or on the part of the owner to suffer, any dominion beyond the true line, wherever it may be."

(74 Kan. 451.)  In *Scott v. Williams* there was testimony to the effect that the plaintiff claimed no more land than was in the northeast quarter of the section, and, of course, the possession was held not to be hostile or adverse.

It would be impossible to reconcile the conflict in the authorities generally respecting the effect of possession of real property taken and held under a mistake as to the true location of the boundary line.  There are many cases which state the rule in general terms and apparently hold that under no circumstances can the possession be adverse where there was a mistake as to the true boundary.  The better-considered cases, however, recognize the existence of two rules, or, at least, they make an exception and hold that the general rule has no application where the party holds possession with intent to claim to the boundary line in any event. (1 A. & E. Encycl. of L. 791, 792.)  In volume 1 of the Cyclopedia of Law and Procedure it is said that "the real test as to whether or not a title will be acquired by a holding for the period prescribed by the statute of limitations is the intention of the party holding beyond the true line.  It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title, that fixes the character of the entry and determines the question of disseizin."  (p. 1037.)  In *Preble v. Railroad Co.*, 85 Maine, 260, the court recognized the existence of the two rules, and in the opinion it was said:

"The distinction between them is neither subtle, recondite or refined, but simple, practical and substantial. It involves sources of evidence and means of proof no more difficult or complex than many other inquiries of a similar character constantly arising in our courts." (p. 266.)

Numerous cases illustrating both rules are referred to and collated in a note to that case in 21 L. R. A. 829. In the note the editor cites a large number of cases holding that one may acquire title by adverse possession

by claiming and occupying up to a fence, notwithstanding by mistake he supposes the fence to be on the true line. Thus, in *Hitchings v. Morrison,* 72 Maine 331, it was held that if the title is claimed clear to the fence, which is not on the true line, the title may be acquired by adverse possession, although by mistake it was supposed to be on the true line. In *Tamm v. Kellogg,* 49 Mo. 118, it was decided that if possession was held to a fence under the claim that it was the true line, and the other party acquiesced or failed to take steps to disturb possession, it was adverse. And, again, in *Handlan v. McManus,* 100 Mo. 124, it was decided that if a fence is held as the true division line by one of the parties, who claims to hold all land to the fence, his possession is adverse. To the same effect are: *Wilson v. Hunter,* 59 Ark, 626; *Ayers v. Reidel,* 84 Wis. 276; *Bunce v. Bidwell,* 43 Mich. 542; *Hockmoth v. Des Grand Champs,* 71 Mich. 520; *James M. Watrous v. William A. Morrison,* 33 Fla. 261; *Alexander v. Wheeler,* 69 Ala. 332; *Fuller v. Worth,* 91 Wis. 406; *Graeven v. Dieves,* 68 Wis. 317; *Taylor v. Fomby,* 116 Ala. 621; *Tex v. Pflug,* 24 Neb. 665. (See, also, note to *Finch v. Ullman,* 24 Am. St. Rep. 383.)

In *Alexander v. Wheeler,* supra, it was said:

"The *quo animo,* or intention with which possession is taken and held by a defendant, must always constitute an essential consideration. . . . But the rule is different where the fence is believed to be the true line, and the claim of ownership is up to the fence as located, even though the established division line is *erroneous,* and the claim of title was the result of the mistake. In such case there is a clear intention to claim to the fence *as the true line,* and the possession does not originate in an admitted possibility of mistake." (p. 340.)

To the same effect is *Hoffman v. White,* 90 Ala. 354.

There must be an intention to claim the land within a certain boundary, whether it eventually be the correct one or not. Where, however, the intent to claim title exists only upon the condition that the fence is

on the true line, the intention is not absolute, but conditional, and the possession is not adverse. (*Shanline v. Wiltsie,* 70 Kan. 177; *Scott v. Williams,* 74 Kan. 448; *Dow v. McKenney,* 64 Maine, 138.)

There is no evidence in this case, as there was in *Scott v. Williams,* supra, that the claim was a provisional one. Two presumptions always obtain with respect to the possession of real estate: (1) It is presumed that the possession is in subordination to the true title; (2) where there is a deed, it is presumed that the grantee entered into possession under his deed, claiming only the title given him by his deed, and that his possession was restricted to the premises granted. (*Fuller v. Worth,* 91 Wis. 406, 410.) Neither of these presumptions hinders, and both help, the claim of the plaintiff. If we look to the deeds under which the plaintiff and his immediate grantor took and held possession, we find that they describe the land as bounded on the south by a hedge fence, so that his entry, his possession and his claim of title are identical. As was said in *Tex v. Pflug,* 24 Neb. 666: "He took possession to the line fixed by the surveyor, and designated as his boundary by his grantor, and held with reference to it, and to nothing else." (p. 669.)

It may be observed that the findings, as well as the evidence, seem to preclude the possibility of the possession having been taken and held through a mistake as to the true location of the boundary line. There is no finding that the claim of the plaintiff and his immediate grantor was provisional—that is, that they claimed to own up to the fence only upon the supposition that this was the true boundary. Nor is there any finding that the fence is not the true boundary. If we turn to the evidence we find nothing to suggest that possession was taken and held up to the fence through a mistake, or that the fence was not the true boundary, except the evidence of the recent survey, made a short time before the commencement of the suit. This survey was made

at the request of the defendants, who owned the land on the south and east. The evidence is that they told the county surveyor to get the description of the land of the plaintiff from his recorded deed, and to serve him with proper notice. It appears, however, that in his notice to the plaintiff he did not describe all the land which the plaintiff claims. Neither in the notice nor the survey was any attention paid to the artificial boundaries mentioned in the deeds under which the plaintiff holds. The notice and the survey proceed upon the theory that the land he was to survey and establish the boundaries of was a tract of ten acres, more or less, commencing at a stone twenty rods west of the northeast corner of the quarter, "then west sixty rods, then south twenty-six rods, then east sixty rods, then north to place of beginning." The west line of the tract which the plaintiff claims to own is described in his deeds as running "south twenty-six rods to hedge fence, then east sixty (60) rods," etc.

The only evidence, therefore, of any mistake as to the south boundary is that a survey, not of the entire tract as described in the plaintiff's deeds or as claimed to be owned by him, but of a different tract of land, shows a south boundary different from the hedge fence. It is altogether probable that the objections raised by the plaintiff to the validity of the survey, based upon the variance in the description of his land in the notice and the description in his deeds, would, in a proper case, be held to be a mere irregularity of which advantage could only be taken by an appeal from the survey. (*Shanline v. Wiltsie,* 70 Kan. 177.) But this is not an action to set aside a survey, but to quiet title to a tract of land to which the plaintiff claims to have held adverse possession for more than fifteen years, so that, in our view, the validity of the survey is not involved, and we only refer to the alleged defects therein to show that there is no evidence that the hedge fence on the south is not the true boundary of the land actually claimed by the plaintiff to be his.

The theory of the defendants, of course, is that a valid survey from which no appeal was taken has permanently fixed the boundaries between the two tracts and determined that the hedge fence never was the true boundary, and that it necessarily follows that the possession of the plaintiff was acquired under a misapprehension as to its true location.  If, however, we concede that such is the effect of the survey, still, under the authorities we have cited, the plaintiff's possession would be adverse, notwithstanding the mistake, if the intention was to take and hold to the fence in any event. Upon this theory we have deemed it necessary to review the cases holding that the test is not whether there was a mistake, but what was the intention of the person holding possession up to the mistaken boundary.

Viewed from still another aspect of the case the judgment must be affirmed.  The petition alleges and the evidence abundantly shows that the defendants, having by their deed fixed the hedge fence as an artificial boundary of the land conveyed, acquiesced in that being the true boundary for a period long enough to estop them from claiming the contrary.  It is well settled that adjoining landowners may, either by writing or parol, agree upon the boundary between their lands, and that their possession on either side up to the boundary so agreed upon will be mutually adverse. (*Steinhilber v. Holmes*, 68 Kan. 607; *Sheldon v. Atkinson*, 38 Kan. 14; *Alexander v. Wheeler*, 69 Ala. 332; *Yates v. Shaw*, 24 Ill. 367; *Cleveland v. Obenchain*, 107 Ind. 591; *McNamara v. Seaton*, 82 Ill. 498; *James M. Watrous v. William A. Morrison*, 33 Fla. 261; *Clark v. Hulsey*, 54 Ga. 608.  See, also, note to case in 21 L. R. A. 833, and note to case in 39 Am. St. Rep. 154; 1 Cyc. 1036.)  The purpose of the original proprietor in planting the hedge throws no light upon the matter.  He owned the land on either side and did not intend the fence as a boundary line; but the defendants afterward, in their

deed, expressly fixed upon this hedge as the south boundary line of the tract which they conveyed. Their situation is the same as though they had agreed with the adjoining landowner that this should be the boundary line. Their acquiescence in it as the true boundary line for a period even less than the statutory period for acquiring title by prescription would estop them. (*Sheldon v. Atkinson*, supra.) Their acquiescence continued beyond the statutory period, and, under the circumstances of this case, should, upon every principle of justice and equity, estop them from now claiming that the fence is not the true boundary.

It is unnecessary to consider whether the court erred in holding the survey void, for the reason that the judgment rests as well upon the findings of adverse possession by the plaintiff and acquiescence in the boundary line by the defendants. The latter is included in the general finding, and is fully sustained by the evidence. This being an action to quiet title, the survey, however valid, can not defeat the action. As held in *Swarz v. Ramala*, 63 Kan. 633, the title to real estate is not put in issue in a determination by the county surveyor of the true boundary line between two tracts of land. It was said in the opinion in that case: "Adverse possession may change the title to real property, but it can not change the location of a quarter section line." (p. 637.) Conversely, it may be said that a valid statutory survey may change the location of the boundary line between two tracts of land, but it can not change the title to the land itself. Suppose that at the time the survey was made the plaintiff held an unrecorded deed conveying to him a perfect title to the strip of land in controversy: it would hardly be contended that his failure to appeal from the survey vested the title to this intervening strip of land in the defendants or prevented the plaintiff from asserting title by his deed. Conceding its validity, the only effect of the survey is to determine the quantity of land which the defendants

deprived themselves of by agreeing in their deed upon a different boundary, and their long acquiescence in that and the other boundaries, and by the adverse possession of the plaintiff.

The judgment is affirmed.