Boyer v. Champeny.

No. 27,874.

In the Matter of the Appeal of CHARLES GLENTON BOYER et al., *Appellants*, v. CHARLES CHAMPENY and J. W. MAVITY, County Surveyor of Sumner County, *Appellees*.

(263 Pac. 1066.)

### SYLLABUS BY THE COURT.

1. BOUNDARIES—*Establishment by Statutory Survey—Jurisdiction of Surveyor.* A statutory survey is to locate boundaries; the title to land is not involved. The surveyor has no jurisdiction to construe and interpret ambiguous deeds of conveyance, to determine the intention of the parties thereto.

2. SAME—*Sufficiency of Survey.* A complaint that a survey is void for inaccuracies is examined and held to be without merit.

3. SAME—*Survey—Time for Filing Report.* Under the facts stated in the opinion it was not error for the court to refuse to set aside a report of a survey on the ground that it was filed too late.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed February 11, 1928. Affirmed.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton* and *W. E. Stanley*, all of Wichita, for the appellants.

*E. J. Taggart* and *John Bradley*, both of Wellington, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from a survey made by the county surveyor on notice, as provided by R. S. 19-1423 *et seq.* The facts disclosed by the record are substantially as follows: The Arkansas river flows in a direction a little east of south through section 36, township 31 south, range 2 east, in Sumner county. Nearly half a mile north of the south line of the section the river divides into two channels, forming an island between them. This island, or the part here in question at least, is described on the government survey as lot 11, island No. 1 of the section. The main channel of the river flows southward to the east of the island. A much smaller channel of the river flows southward west of the island. This island, and other land near it, was owned by E. M. Nevins. Nevins erected a mill near the intersection of the south line of section 36 and the west channel of the river, to be operated by water power. To do this he put a dam or head gate across the west channel of the river near the

Boundaries, 9 C. J. pp. 260 n. 49, 262 n. 91; 4 R. C. L. 116.

mill. Then, in order to get a greater or more uniform flow of water through the west channel of the river, he built a dam across the east or main channel of the river. This building was done in 1875 and 1876. The dam began on the east bank of the main channel some distance north of the north end of the island and extended in a southwesterly direction diagonally across the east channel of the river to the end of the island, and terminated at its west end at a point on the east side of the west channel of the river. This dam was perhaps 1,600 feet long. The west (or south) end of it, for several hundred feet, was along, or over, a low sandy stretch from the north end of the island, as surveyed by the United States government survey, to where the water divided to form the two river channels. The west channel of the river later became known as the mill race or cut-off.

In September, 1899, Nevins sold the mill property to C. S. Griffin and conveyed the same by warranty deed. This deed described the mill property proper, with which we are not here concerned, and—

"Also a strip of land thirty feet wide off of west side of lot 11, island No. 1, in sec. 36, twp. 31 S., range 2 east, described as follows, to wit: Commencing fifty feet south of the dam and head gate in the mill race or cut-off west of island No. 1 in S. E. ¼ of sec. 36, twp. 31 S., range 2 east; thence running north along said mill race or cut-off to a point within ten (10) rods of the west end of the dam, at water line across the Arkansas river; thence east to the Arkansas river; thence northerly along said river to the dam; thence south along said mill race or cut-off to the place of beginning."

The appellee, Charles Champeny, claims through mesne conveyance under this deed.

In January, 1909, Nevins conveyed to Thomas Marvin Boyer and Charles Glenton Boyer, appellants herein,

"Lot eleven (11), island No. one, in section thirty-six, township thirty-one south, range two east, except a strip of land off of the west side of lot eleven, island No. one, described as follows: Commencing 50 feet south of dam and head gate in the mill race of cut-off west of island No. one, in section 36, township 31 south, range 2 east; thence running north along said mill race or cut-off to a point within 10 rods of west end of the dam at water line—dam across Arkansas river; thence east to Arkansas river; thence north along said river to south end of dam; thence southerly along said mill race or cut-off to place of beginning,"

and other property with which we are not here concerned. On January 3, 1924, Charles Champeny gave the county surveyor notice of his ownership of the property described in the deed under which he claims and of his desire of a survey "to establish permanently the

Boyer v. Champeny.

point which is located within ten rods of the west end of dam across the Arkansas river (as stated in the description)." Due notice was given to the appellants. Appellee, appellants and others were present at the time of the survey. At the time of the survey the south end of the dam, as originally constructed, for some distance, perhaps 800 feet, had been covered with sand and dirt. The surveyor took evidence of the location of the west end of the dam. The location of the thirty-foot strip was not in dispute. The real point in controversy which the parties desired to have located was the point within ten rods of the west end of the dam. After locating that point the surveyor ran a line east to the main channel of the river, thence north along the river to the dam, thence south along the east bank of the west channel of the river to the place of beginning. The actual work of surveying was begun February 25, and adjourned to March 10, 1924, when it was completed. The parties requested the surveyor not to file his survey at once, but to give them an opportunity to furnish additional evidence as to the location of the west end of the dam. The surveyor waited for additional evidence to be furnished him, which was not furnished, and the report of the survey was filed on August 5, and the parties notified of such filing. An appeal was taken to the district court by the Boyers. The case was there tried and additional evidence offered, and the survey as made was approved. From this ruling they appealed to this court.

The principal question argued by appellants here turns upon the construction or interpretation of the deeds executed by Nevins in 1899 and in 1909 under which the respective parties claim title, parts only of which deeds have been above set out. It is not contended that the surveyor did not correctly locate the west (or south) end of the dam as it was originally constructed in 1875 and 1876. But it is argued that if the surveyor had properly interpreted and construed these deeds he would have disregarded, in making the survey, all that part of the west (or south) end of the dam as originally constructed, about 800 feet in length, which was then covered with sand and dirt, and would have considered the dam as referred to in these deeds as consisting of that portion only of the dam which was visible at the time of the survey. Obviously, many questions enter into the construction and interpretation of these deeds for the purpose of determining the intention of the grantor in them, and of the grantees. Such construction not only requires an interpretation

of the language used in the respective instruments, but the situation of the property at the time the deeds were executed and any contracts or understandings of the parties at the time, and perhaps actual use made of the property thereafter. The county surveyor is not a proper forum in which to litigate questions of this character. He has no jurisdiction to hear evidence on and determine such questions. Such questions should be litigated or determined in a court of equity upon proper pleadings and with the proper parties before it. The function of the county surveyor in conducting a survey, under the statute, is to locate corners or boundaries. Title to property is not involved in such a proceeding. (*Swarz v. Ramala*, 63 Kan. 633, 66 Pac. 649; *Edwards v. Fleming*, 83 Kan. 653, 664, 112 Pac. 836; *Terrell v. Chessmore*, 94 Kan. 611, 146 Pac. 1152; 9 C. J. 260.) The result is that the location of the west (or south) end of the dam, as found by the surveyor, must stand as a correct location of that point. If the parties contend that the deeds, properly construed and interpreted, did not refer to that point, but referred to another, that question must be determined in a proper action brought for that purpose. That question cannot be determined in this proceeding, and we express no view concerning it.

Appellants contend that the survey was incorrect for the reason, first, that it did not survey and locate on the ground the "thirty-foot strip" mentioned in the deed under which appellee claims; and, second, for the reason that, beginning at the point "within ten rods of the west end of the dam," thence east to the river, north along the river to the dam, and south along the east bank of the mill race to the place of beginning, the survey expanded this thirty-foot strip into a tract about 600 feet wide, at its widest place, and about 800 feet long, the contention being that at most appellee has only a thirty-foot strip around that tract. As to the first of these, there was no contention between the parties as to the location of the thirty-foot strip along the east side of the mill race; that is, beginning at a point fifty feet south of the dam and head gate in the mill race and extending north along this mill race a quarter of a mile or more, to the point within ten rods of the west (or south) end of the dam, and no one asked that that thirty-foot strip be surveyed and marked. Had appellants desired that to have been done, the district court could have ordered it done, even at the time of the hearing before it. (R. S. 19-1426.) Since appellants did not do so they cannot now complain of that matter. As to the second point,

Boyer v. Champeny.

perhaps appellants' interpretation of the deed under which appellee claims, that it conveyed only a thirty-foot strip around the edge of the tract described, beginning at a point within ten rods of the west (or south) end of the dam, is not a correct interpretation of that deed. But we shall not decide that matter. Whether the line from the point above mentioned east was that of a thirty-foot strip, or of a larger tract, it formed a boundary between the land·claimed by appellee and that claimed by appellants, and it would appear from the deed under which appellants claim that they got nothing north of that boundary in any event. So, in these respects, there is no inaccuracy of the survey of which the appellants can complain.

Appellants contend that the report of the survey should be set aside and held as void for the reason that it was not filed within thirty days after the survey was completed. This point is not well taken. It is true that the actual work of surveying on the grounds was completed on March 10, and the report of the surveyor was not filed until August 5, but the surveyor had taken evidence as to the location of one of the important corners, and both the appellants and the appellee had requested the surveyor not to complete his survey and file it until they had an opportunity to furnish additional evidence. This was the reason for the delay in the completion of the survey and the filing of the report. Just when the work in connection with this survey was actually completed and the report fully prepared is not shown, other than that it was sometime between March 10 and August 5. The delay was in part occasioned by appellants, and for that reason they cannot complain, and there is no showing that the work thereon was actually completed more than thirty days before the date it was filed. The parties were promptly notified of the filing of the report, and took their appeal in due time. No one was injured by the delay in the completion and filing of the report.

Finding no error in the record, the judgment of the court below is affirmed.