EMMA A. PARKS, *Appellee,* v. CHARLOTTE BAKER *et al., Appellants.*

No. 16,210.

### SYLLABUS BY THE COURT.

1. DEEDS—*Description of Boundaries—Parol Evidence.* Where one of the boundaries in the description contained in a deed of conveyance is doubtful and ambiguous, parol evidence of the actual physical location of the boundary by the parties while the negotiations for the conveyance were in progress is competent to aid in the interpretation of the instrument.

2. STATUTE OF FRAUDS—*Oral Agreement Establishing Boundary.* The rule giving effect to a parol agreement establishing the boundary-line between adjoining tracts of land stated in *Steinhilber v. Holmes,* 68 Kan. 607, is followed.

Appeal from Washington district court; WILLIAM T. DILLON, judge. Opinion filed December 11, 1909. Reversed.

*Frederick Powell, William F. Sapp,* and *Andrew S. Wilson,* for the appellants.

*T. P. Roney, Charles Smith,* and *Edgar Bennett,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: Lots 11, 12 and 13 of block 4 in Washington front north on an east-and-west street. Lot 11 is bounded on the east by an alley extending north and south and separating that lot from a tier of lots fronting east. On November 23, 1891, all these lots be-

longed to W. Calvet and his wife, who then occupied a
house on lot 11, which was next east of lot 12. An-
other dwelling stood on lot 12. The lots were 59.4 feet
in width, according to the recorded plat. There was a
well at the southwest corner of the dwelling occupied
by the Calvets. A fence extended from a post on the
north line of these lots to the northwest corner of the
house, where it was attached to the house, and from
the center of the well at the southwest corner of the
house south to an alley extending east and west along
the south end of the lots. This fence, with the west
end of the house, formed the east boundary of an en-
closure which was supposed to include all, or nearly
all, of lots 12 and 13, and was used as the boundary
between the premises occupied by the tenant on lot 12
and the premises occupied by the owners on lot 11, the
well being used in common. The defendants, Mr. and
Mrs. Baker, examined these premises and were shown
the property by Mr. and Mrs. Calvet. At that time
neither the owners nor the defendants knew where
the lot lines were, but the defendants purchased the
premises described in the conveyance made to Mrs.
Baker on November 23, 1891, as follows:

"All the following-described real estate, situated in
the county of Washington and state of Kansas, to wit:
All that part of lots twelve (12) and thirteen (13) in
block four (4) in the city of Washington, Kan., lying
west of the west end of the residence now owned and
occupied by said grantors and more particularly de-
scribed as follows, to wit:

"Commencing at a point on the north line of said lot
No. twelve directly north of the west end of said
dwelling house and running south to the alley, thence
west along the north line of said alley to the southwest
corner of said lot No. thirteen (13), thence north along
the west line of said lot to the northwest corner thereof,
thence east along the north line of said lots to the place
of beginning.

"Said grantors hereby grant the said grantee the
free use of the well used in connection with the prem-

ises above granted as long as he bear one-half of the expense of cleaning and repairing said well."

The defendants took immediate possession of the premises included in the enclosure referred to, and were in the undisturbed, open possession thereof when this action was commenced.

On September 10, 1903, W. Calvet and wife made a conveyance to Emma A. Parks of premises thus described:

"All the following-described real estate situated in the county of Washington and state of Kansas, to wit:

"Lot No. eleven (11) in block No. four (4), in the city of Washington, county and state aforesaid; and all that part of lot No. twelve (12) which was not deeded to Charlotte Baker."

Mrs. Parks took immediate possession under this deed of all the premises east of the fence forming the west boundary of the enclosure, before described, and made no claim to any of the premises west of that fence so occupied by the defendants until shortly before the commencement of this action, when she demanded a strip of land sixteen and one-half feet wide from the east side of the premises occupied and claimed by the defendants, west of the west end of the house and the connecting fence above referred to.

This action was commenced by Mrs. Parks to recover this west sixteen and one-half feet of lot 11. On the trial evidence was offered tending to show that considerable uncertainty existed as to the true location of the lot lines in that block and in other parts of the city; that the Calvets, owning only lot 11 at the time they built their dwelling house upon it, were afterward informed that this house extended one foot upon lot 12; and that they afterward purchased lots 12 and 13, and then erected the fence connecting with the west end of their dwelling house, before referred to. The evidence tended to prove that the west line of lot 11 designated

23—81 KAN.

upon the recorded plat of the town site was sixteen and one-half feet west of this north-and-south fence on the east side of the premises occupied by the Bakers, and the judgment was for the plaintiff for its recovery.

The defendants contend that in applying the rule that fixed visible monuments control courses and distances in the description of lands all the land west of the west end of the house and the connecting fence was conveyed to Mrs. Baker, the house being the controlling monument. But if the description should be considered ambiguous or of doubtful meaning, susceptible of different interpretations, then they contend that parol evidence offered by them to prove that this fence was the boundary actually agreed upon at the time of the conveyance was erroneously rejected. They insist, also, that evidence offered to prove that a parol agreement was afterward made between the parties establishing the boundary-line in question, which evidence was also rejected, should have been admitted.

With respect to the first of these claims the plaintiff contends that applying the same rule—that fixed monuments govern—no part of lot 11 was conveyed by the first deed. She insists that the controlling monument is not the house, but the initial point in the "north line of lot 12," referred to in the deed, and that in starting there an intention was shown to reserve all of lot 11. On the other hand, the defendants insist that this reference to the north line of lot 12 only indicates a mistake, growing out of the prevailing uncertainty as to lot lines.

The description of the east boundary in the deed to Mrs. Baker is ambiguous. The evidence shows that a point directly north of the west end of the house would not be in the north line of lot 12, but would be in the north line of lot 11. It is clear that there is a mistake in one of these particulars. In *Mayberry v. Beck*, 71 Kan. 609, it was held:

"Where there is a latent ambiguity in the descrip-

tion of the land conveyed by deed parol evidence may be received, not to contradict the instrument but to explain the ambiguity, and to that end testimony as to the situation and condition of the land conveyed, the circumstances under which the conveyance was made and the practical construction put upon the conveyance by the parties may be admitted.": (Syllabus.)

The description in the deed under consideration presents a proper case for the application of this rule, which is supported by numerous decisions in other states and by text-writers. (*Purkiss v. Benson,* 28 Mich. 538; *Dodd v. Witt,* 139 Mass. 63, 66; *Jackson v. Britton,* 4 Wend. [N. Y.] 507; 1 Green. Ev., 16th ed., p. 431; 4 Wig. Ev. §§ 2470-2474; 20 Cent. Dig. cc. 3071-3073.) The statements of the grantors made while negotiating the sale respecting the location of the boundaries and corners were competent as tending to identify the property they intended to convey and to aid in the interpretation of the uncertain description in the deed. Evidence of this character was offered and excluded. This ruling was erroneous.

The defendants also offered testimony to prove that after the deed to the plaintiff had been executed, and while both parties were in possession and claiming under their respective deeds, they agreed by parol that the boundary-line between their respective properties should be the fence so extending north and south from the west end of the house before referred to. This testimony was also excluded. In *Steinhilber v. Holmes,* 68 Kan. 607, it was held:

"The owners of adjoining tracts of land may, by parol agreement, settle and permanently establish a boundary-line between their lands, which, when followed by possession according to the line so agreed upon, will be binding upon the parties and their grantees. Such an agreement, followed by possession, is not obnoxious to the statute of frauds." (Syllabus.)

The evidence shows that at the time referred to in this offer the lot lines in block 4 and other blocks were

still uncertain; to use' the language of a witness for the plaintiff, it "had always been a wide-open question in that town." The location of this particular boundary, according to the plat of the town site, was unknown to both parties. Their grantors had been in doubt over the matter, and the deed made by them to Mrs. Baker was susceptible of two interpretations. If in such a situation these parties mutually agreed upon the line, their action was commendable, and proof of such an agreement was erroneously excluded.

For the errors referred to, which appear to have been material, the judgment is reversed and the cause is remanded for further proceedings.