John Peterson, *Appellant*, v. William Hollis et al., *Appellees.* ·

No. 17,902.

SYLLABUS BY THE COURT. .

1. BOUNDARIES — *Oral Agreement — Division Fence — Adverse Possession.* Adjoining landowners orally agreed that one was to assist in resetting and maintaining a hedge on the land of the other, near and parallel to their boundary, and that in return therefor it was to become their dividing line. The work was done and possession was taken and held accordingly. The question whether the contract was thereby taken out of the statute of frauds is suggested but not decided.

2. ——— *Same.* Where a landowner holds up to a fence, with the purpose of claiming it as his boundary irrespective of whether or not it corresponds with the true line, and does nothing inconsistent with this intention, his occupancy is adverse, even although the adjoining owner supposes he intends to claim only what he originally owned.

3. TITLE—*Adverse Possession for Fifteen Years—New Survey.* The title to the land up to a fence, which has been gained by adverse possession for fifteen years, can not be devested by a survey called to establish the original surveyor's boundary line.

Appeal from Saline district court; B. A. Mason, judge. Opinion filed November 8, 1913. Reversed.

*C. W. Burch, B. I. Litowich,* and *B. A. Mason,* all of Salina, for the appellant.

*Thomas L. Bond,* of Salina, for the appellees.

The opinion of the court was delivered by

MASON, J.: This case grows out of a controversy between adjoining landowners concerning the title to a strip of land five feet wide, lying between a quarter-section line, and a line marked by a hedge. Stated in another form, the disputed question is whether the quarter-section line or the hedge constitutes the present boundary between their lands. The trial court made detailed findings, which are not challenged, and are therefore to be regarded as settling the facts of the case.

The plaintiff, John Peterson, has owned and occupied the east half of the southwest quarter of a section of land since 1872. The defendants, William Hollis and Hattie D. Hollis, are the owners of the southeast quarter of the section, subject to the controversy regarding the strip referred to, which is the west five feet of this southeast quarter section, and is claimed by both parties. The plaintiff undertook to build a fence along the east line of this strip, and brought the present action to enjoin the defendants from interfering with it, thus raising the question already stated. The court gave judgment for the defendants, and the plaintiff appeals.

In 1872 the then owner of the Hollis quarter, one Goodspeed, set out the hedge referred to, purposely placing it five feet east of, and parallel to, the west line of his land, which had recently been surveyed and was marked by monuments. In 1874 parts of this hedge had died out. Goodspeed told the plaintiff that if he would aid in resetting and cultivating the hedge, he could have one-half of it, and it should be the line between their lands. The plaintiff accepted the proposition and complied with its conditions. Goodspeed knew where the hedgerow was located with respect to the quarter-section line, but the plaintiff did not know and took no trouble to ascertain whether it corre-

sponded with that line or not. He, however, thereafter treated the hedge as a line fence, remaining in the occupancy of the strip now in dispute for more than fifteen years, and practically up to the time of the present action. The defendants derive title from Goodspeed through a series of warranty deeds, each purporting to convey the entire quarter section. Some of the earlier owners knew of the arrangement between the plaintiff and Goodspeed with regard to the hedge, but the later ones, including the Hollises, did not. In 1907 William Hollis called for a survey of the southeast quarter section, which was made, establishing the west line of said quarter five feet west of the hedge. The plaintiff was notified of the survey, but did not participate in it. He stated to the surveyor and to William Hollis, in effect, that he claimed to the hedge row in virtue of an agreement with Goodspeed, irrespective of the location of the quarter-section line, and that for this reason he would not be bound by the survey.

Oral agreements between the owners of adjoining lands that a specified line shall constitute their boundary, where the true location is uncertain or disputed, are universally upheld. The statute of frauds is said not to apply because the contract is not one for the conveyance of real property—it does not involve any transfer of title. It is regarded as a binding acknowledgment on each side that the designated line is in fact the real boundary. That principle can not control the present case, because here an actual change of ownership was intended. Goodspeed knew just how much land he was undertaking to give. The plaintiff did not know just how much he was to acquire, but he undertsood that in return for his work upon it the hedge was to become the dividing line of the two farms—that he was to own up to the hedge, no matter where the quarter-section line might run. The author-

ities are practically uniform that such a contract is unenforceable, although followed by occupation under it, because of the statute of frauds, and because it is an attempt to pass the title to real estate without a writing. (Note, 10 L. R. A., n. s., 610; Note, Ann. Cas. 1912 B, 662; 20 Cyc. 225.) The two recent Kansas cases relating to the oral settlement of a boundary dispute are consistent with this doctrine. They recognize the distinction between an agreement that a specific line shall be deemed to constitute the existing boundary, and a contract for the change of the dividing line. In one of them it was said: "The agreement is not viewed as one passing title." (*Steinhilber v. Holmes,* 68 Kan. 607, 611, 75 Pac. 1019.) And in the other: "The lot lines  . . .  were still uncertain.  . . . The location of this particular boundary  . . .  was unknown to both parties." (*Parks v. Baker,* 81 Kan. 351, 355, 356, 105 Pac. 439.)

The present case differs from most—perhaps from all—of those in which the rule referred to has been applied in this: Here there was an independent consideration to support the agreement to cede a part of Goodspeed's land to the plaintiff—the helping to reset and maintain the hedge. This consideration involved a permanent improvement of the premises, and was fully performed.  There is at least room for a plausible argument that these facts render the contract enforceable. The question suggested need not be decided, for we are of the opinion that in any event the plaintiff has acquired title to the strip in controversy by adverse possession for the period of prescription. For more than fifteen years he occupied all the land west of the fence. His purpose was not merely to claim to the quarter-section line, or to the hedge, upon the assumption that it coincided therewith. He claimed title up to the hedge, irrespective of the position of the surveyor's line. True, the Hollis tract was not occupied for fifteen years by owners who recognized the plaintiff's claim. For most

of the time its occupants doubtless supposed the hedge to mark the quarter-section line. Their belief in this respect, however, does not affect the matter. The plaintiff's occupancy was characterized by his own mental attitude, not by theirs, unless it was induced by some conduct on his part inconsistent with his claim.

"Where adjoining landowners agree as to the boundary line between their lands, and each occupies to such agreed line, the occupancy of one who encroaches on the land of the other is under a claim of right or ownership so as to render it adverse. . . . When one of two adjoining landowners, without actual knowledge of the true boundary line, takes possession beyond the true boundary line, with the intention to claim the line to which he takes possession as the boundary line, his possession is under a claim of title or ownership so as to render his possession of the encroachment adverse." (2 Enc. L. & P. 400, 401.)

"Where the occupation of the land is by a mere mistake, and with no intention on the part of the occupant to claim as his own land which does not belong to him, but he intends to claim only to the true line, wherever it may be, the holding is not adverse. In cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period prescribed by the statute of limitations is the intention of the party holding beyond the true line. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title, that fixes the character of the entry and determines the question of disseizin." (1 Cyc. 1037.)

The rule that the holding of land up to a fence or other physical barrier is not deemed adverse, where the purpose is to claim only to the true property line, has usually been applied where both the adjoining owners supposed the two lines to coincide. In cases where the effect of possession taken and held up to a barrier has been made to turn upon intent, the contending parties have usually had the same understanding—if there has been a mistake they have shared it. It does not follow that in order for the holding to be

adverse each owner must in fact understand that a claim is made to the barrier, irrespective of whether it corresponds with the original boundary. In order to make his possession adverse, an occupant who openly holds possession up to a fence need not add to this act any affirmative declaration that he renounces the surveyed line. The fact that he has the actual possession puts the adjoining occupant on inquiry as to the extent of his right, and so long as he does nothing inconsistent with an assertion of absolute ownership his neighbor can derive no advantage from assuming that he claims only the land to which he has a paper title.

The view that the plaintiff's possession was adverse deprives purchasers subsequent to the running of the statute of the protection of the recording act. His occupancy gave notice of his title.

The plaintiff having acquired title to all the land west of the hedge, irrespective of the location of the quarter-section line, could not be devested of it by a survey called to fix the location of that line. The surveyor's province was to determine, in case of dispute, the location of the line between the southwest and the southeast quarters of the section. He had no jurisdiction to decide whether the plaintiff had purchased or otherwise acquired any part of the southeast quarter. (*Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836.)

The suggestion is made that the remedy of injunction was not available to the plaintiff. The situation is unusual. The controversy was within the jurisdiction of a court of equity. The facts have been fully found, and it remains only to apply the law to them. The precise form of the action can not now be important.

The judgment is reversed and the cause remanded with directions to render judgment for the plaintiff.