Mercantile Co. v. Wimer.

No. 19,348.

THE L. & M. MERCANTILE COMPANY, *Appellant,* v.
O. A. WIMER, *Appellee.*

SYLLABUS BY THE COURT.

1. CONTRACT — *Exchange of Property—Effect of Supplemental Contract—Fixtures—Real Property.* The parties to a written contract executed a subsequent agreement which contained the recital, "and there being some misunderstanding between the parties as to certain provisions of the said contract originally entered into, it is hereby agreed between the parties as follows, as a suplemental agreement:" but covered numerous matters not embraced in the former. *Held,* not to preclude either party from claiming and showing that certain property not specifically mentioned in such later contract and invoiced as personalty was in law to be regarded as real estate whether such wrongful classification as personalty had been by mistake or design.

2. SAME—*Fixtures Affixed to Building—Regarded as Real Property.* It was not error to give an instruction that shelving, a

gas-light system, engine, feed mill, cash-carrier system, roller ladder and track, if permanently affixed to the building by nails, bolts or screws with the intent that they be permanently used in carrying out the designed purpose of the building, should be regarded as realty unless the parties had otherwise agreed.

3. TAXES—*Paid by Request of Grantor of Warranty Deed— Recovered Back.* After accepting a deed containing a covenant of warranty against taxes the grantee wrote a letter requesting the grantor to pay such taxes and promising to reimburse him. *Held,* that compliance by the grantor rendered the grantee liable for the sum so paid.

Appeal from Scott district court; ALBERT S. FOULKS, judge. Opinion filed March 6, 1915. Affirmed.

*H. A. Russell,* of Scott City, and *W. H. Russell,* of La Crosse, for the appellant.

*R. D. Armstrong,* of Scott City, *Lee Monroe, James A. McClure,* and *C. M. Monroe,* all of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff company sued on four causes for action for the recovery of $1989.68, $53.53, $433.23 and $191.31, respectively, on a certain promissory note for money had and received for delinquent taxes on real estate purchased by the plaintiff, and for a defaulted payment and interest on another promissory note. The first, second and fourth causes of action and $99.30 of the third were practically confessed and the controversy was really over the claims asserted by the defendant in his various pleadings, the substance of which was that the plaintiff had swindled him in a transaction involving an exchange of merchandise for land. It was alleged that the defendant was a farmer and had never been engaged in mercantile business, that the plaintiff by its president represented that the stock was in first-class condition, clean and merchantable, and would sell readily as first-class merchandise,

and was free from shelf-worn and deteriorated stock, all of which statements were knowingly false and fraudulent; that the stock was invoiced and valued upwards of $17,000, but was in fact worth about $9000, and that the defendant was cheated to the extent of the difference. Further allegations were made touching the conduct of the plaintiff respecting the invoice and marking of the goods, and in reference to another stock agreed to be taken in addition to the one already mentioned, to consist of new suits of a total value of not more than $200 to which the plaintiff added and shipped to the defendant other goods so that all amounted to upwards of $817.62, such goods being shelf-worn stuff not worth to exceed ten per cent of the price shown on the invoice. Further, that certain property purchased of the plaintiff as real estate for the sum of $18,000 turned out to consist of personal property to the extent of $831.50 in value which the plaintiff fraudulently led the defendant to believe was a part of the real estate; that in the invoice of the stock were items of millinery, $275 including freight, which did not belong to the plaintiff and which the defendant did not agree to purchase and which were of no value whatever; that later a supplemental agreement was entered into by which the plaintiff was to pay the defendant a certain sum for his interest in an artesian well, such interest being worth $100; and lastly, that the plaintiff had failed to repay as he had agreed to do; and judgment against the plaintiff was prayed in the sum of $7698.31. An extended reply was filed and a trial was had resulting in a verdict in favor of the defendant for $1788.99 over and above plaintiff's claims. The plaintiff appeals, assigning and asserting error in the admission and rejection of evidence, in giving and refusing instructions and in overruling the motion for a new trial.

In the plaintiff's brief it is contended that the contract for the exchange was reduced to writing after

the stock had been invoiced and examined by the defendant, during which matters of differences had been compromised as they arose; that the stock had been retained without complaint with full knowledge of its condition; that the controversy over the fixtures had been compromised; that the land involving the taxes had been conveyed by deed warranting it free from taxes; and finally, that the differences had been adjusted and a thorough understanding and settlement, including the question of fixtures, had between the parties.

Our attention is not called to the evidence which is deemed to support these contentions and there were no special findings. The defendant by counter-abstract brings into the record evidence which fairly tends to support his claim that the scheme to defraud him was adroitly planned and skilfully carried out, such testimony being offered by the defendant, his son, and various clerks and salesmen who had knowledge of the stock and its condition and value. All this evidence and much more which is not embraced in the abstract was considered by the jury, who found adversely to the plaintiff's contention, which finding was approved by the trial court.

The plaintiff requested an instruction that under the pleadings and evidence it appeared that the parties agreed on the value of the fixtures, that a later agreement of March 29, 1912, embodied the former agreement, so that any further claim on account of such fixtures was thereby waived. The agreement of March 29, 1912, included among other things a provision that the windmill, pump and tank were to be stricken from the invoice and to go as part of the real estate on which they were situated. It is strenuously asserted and disputed that this was a compromise agreement; but aside from its recital, "and there being some misunderstanding between the parties as to certain provisions of the said contract originally entered into," there is nothing

to indicate a compromise, and the quoted words are
immediately succeeded by the following: "It is hereby
agreed between the parties as follows, as a supple-
mental agreement." And an inspection indicates a
supplemental rather than a compromise contract. The
plaintiff testified that Mr. Livengood told him the list
of things invoiced, aside from the windmill, pump and
tank, were personal property and that he did not find
out differently until he consulted a lawyer, which was
a month or six weeks after the contract of March 29
was signed. Mr. Livengood testified that he thought
it was personal property, that he would not have asked
the plaintiff to pay for it had he thought it was really
a part of the real estate. So at least there seems to
have been a mutual misunderstanding or mistake con-
cerning the legal character of certain property—consist-
ing largely of shelving—and no reason occurs why one
who was purchasing of another and paying for real
estate should, because of mutual misapprehension, be
called on to pay for a part of it twice. All the facts
were before the jury, and we do not find any affirmative
showing of prejudicial error in refusing the requested
instruction.

Complaint is made of an instruction given, that if
certain shelving, gas-light system, engine, feed mill,
cash-carrier system, roller ladder and track were per-
manently affixed to the building by nails, bolts or screws
with the intent that they be permanently used in carry-
ing out the purpose for which the building was designed
they should be regarded as a portion of the real estate
and not as personal property unless the jury should
find an agreement that they were to be invoiced as per-
sonal property or that there was a settlement of the
matter between the parties, in either of which events
they were to be regarded as personal property. This
instruction appears to state the law correctly and it
was not error to give it. (*Bank v. Bank,* 6 Kan. App.
400, 50 Pac. 1098; *Marshall v. Bacheldor,* 47 Kan. 442,

37—94 KAN.

28 Pac. 168; *Bank v. James,* 75 Kan. 842, 89 Pac. 1132; 19 Cyc. 1039.)

. . It is urged that the defendant was obligated to pay the taxes on the Colorado land in pursuance of the provisions of the deed executed by him which contained a covenant that the land was free and clear from all taxes, assessments and incumbrances of any kind and nature whatsoever. In the defendant's amended and supplemental answer he alleged that these taxes consisted of an irrigation tax amounting to $333.95, and certain other taxes amounting to $94.81; that on or about February 13, 1912, it was agreed between the parties that the irrigation tax should be paid by the plaintiff and the remaining taxes by the defendant, who admitted his liability therefor. There was considerable evidence introduced touching this alleged agreement, and the jury were instructed that if they should find from the evidence that there was an agreement made by which the defendant was to pay the delinquent taxes for 1911, or that there was any agreement as to the payment of such taxes other than that contained in the deed, they should find for the plaintiff. Testimony on this matter was conflicting, and the jury appeared to have believed that of the defendant. It is argued, however, that the matter was covered by the written contract expressed by the deed and could not be affected by parol testimony. To this it is replied that the consideration of a deed may always be inquired into, and in addition the plaintiff's president wrote a letter about March 1, 1912, asking to have the defendant pay this item and promising that he would reimburse him therefor. The real-estate agent who brought about the exchange testified that he had some correspondence with the president about the taxes, and received a letter which he showed to the defendant, telling the latter to pay the first half of the taxes for 1911 up to the date in 1912, and when the deed was consummated he would reimburse him therefor. The defendant testified that the agent telephoned him that

he had a letter from the president asking him to go down and pay these taxes; that afterwards he, the defendant, read the letter. "Q. State what was said in that letter? A. He asked me to pay the taxes and he would give me credit for them down here and I took a receipt." The plaintiff refers to the deed of February 13, 1912, and acknowledged on the same date as having been reacknowledged February 13, 1912, as in the nature of a reiteration of the warranty against taxes. This, however, is explained by the recital of April 12, 1912, that Oliver Adam Wimer was one and the same person as O. A. Wimer, the grantor.

Such of the testimony as appears in the record presents the somewhat usual case of a man unversed in mercantile business anxious to trade land for a stock of goods craftily misrepresented as to quality and value, and there seems to have been the usual conflict of evidence resulting in a verdict fairly supported evidentially and approved by the trial court.

Finding no error materially prejudicial to the rights of the plaintiff the judgment is affirmed.