No. 22,240.

JOSEPH KYTE, *Appellant*, v. JACK CHESSMORE, *Appellee*.

SYLLABUS BY THE COURT.

1. PRACTICE—*Burden of Proof—Opening and Closing Argument to Jury.* Although one party may be required to introduce the first evidence, because of formal proof required of him under the pleadings, it is proper to allow the other to open and close the argument to the jury where the burden of proof on the controverted issues is found to rest upon him.

2. SAME—*Deposition Filed Too Late—Exceptions Thereto.* By virtue of the statute requiring a deposition to be filed at least one day before the trial is begun, it is proper to reject a deposition filed during the trial, even though the objection to it is made orally, notwithstanding the provision that exceptions to depositions shall be in writing.

3. BOUNDARY — *Between Adjoining Tracts of Land — Evidence — Line Fence—Adverse Possession.* It is held that no reversible error was committed in allowing a witness to testify that a fence had been recognized and claimed as a boundary by the occupants of adjoining tracts, notwithstanding his statements partook somewhat of the nature of conclusions.

4. SAME. The evidence is held to have warranted the submission to the jury of the questions whether an agreement had been made establishing a boundary, and whether possession held up to a fence had been adverse.

5. SAME. Objections to instructions are held not to be tenable.

6. SAME—*Instructions.* An instruction is held to point out sufficiently for the purposes of the case the distinction between a claim of owner-

ship up to a fence on the theory that it marks the true boundary, and such a claim made irrespective of that consideration.

7. SAME—*Evidence—New Trial*.  The evidence with regard to the boundary between two of the quarter sections involved is held to have differed sufficiently from that regarding two others to justify the granting of a new trial in the one respect and denying it in the other.

8. SAME—*Adverse Possession*.  The fact that the owner of an undivided interest in a tract, who had never been in actual possession, made no claim with respect to the boundary, has no necessary bearing upon a question of adverse possession by his cotenant.

Appeal from Rawlins district court; WILLIAM S. LANGMADE, judge.  Opinion filed March 6, 1920.  Affirmed.

*J. E. Addington,* and *J. S. Ensminger,* both of Topeka, for the appellant.

*Dempster Scott, C. E. Scott, W. S. Langmade, E. E. Howard, L. M. Parker,* and *C. A. P. Falconer,* all of Atwood, for the appellee.

The opinion of the court was delivered by

MASON, J.:  Joseph Kyte owns two adjoining quarter sections of land, one lying south of the other, and A. J. (Jack) Chessmore owns the two quarters lying immediately east of them.  In August, 1912, proceedings were instituted for a survey which resulted in a judgment of the district court fixing the location of the north and south section line between the two 320-acre tracts about forty feet east of a fence which had theretofore been regarded as marking the boundary.  On March 6, 1915, that judgment was affirmed on appeal, and in the opinion it was said:

"It is said that the survey disturbs a boundary agreed upon by the respective owners of the west halves of sections 25 and 36, and the east halves of sections 26 and 35, upon which fences have been built marking the limits of ownership and possession.  The survey merely established the true line.  It does not affect the location of an independent agreed boundary, or ownership or possession depending upon a boundary agreement lawfully made."  (*Terrell v. Chessmore,* 94 Kan. 611, 614, 146 Pac. 1152.)

On October 16, 1915, Kyte brought ejectment against Chessmore for the strip between the fence referred to and the sec-

tion line so established. A jury trial resulted in a verdict for the defendant. A motion for a new trial was sustained so far as the controversy concerned the two south quarters, and otherwise was overruled, judgment being rendered accordingly. The plaintiff appeals, the only questions involved being those relating to the boundary between the two north quarters.

1. The plaintiff complains because, while he was required to begin the introduction of evidence, the defendant was allowed to open and close the argument to the jury. The petition was in the usual short form, and the answer was a general denial. The plaintiff in the first instance proved his ownership of the two western quarter sections and the establishment of their east line. This was necessary in the state of the pleadings, but was really a mere matter of form, there being no controversy over that feature of the case. The defendant then developed the real subject of dispute by attempting to show the establishment, by agreement and adverse possession, of a boundary other than the surveyor's line. These were the controverted issues on which the case was submitted to the jury, and upon them the defendant had the burden of proof and was properly given the privilege of opening and closing the argument.

2. The plaintiff offered in evidence a deposition which had been filed on the day the trial was begun, but whether at an earlier or a later hour is not shown by the abstracts. The appellee in his brief says the deposition was received by the clerk after the trial had started. It was rejected because it had not been filed at least one day before the trial, as required by the statute. (Gen. Stat. 1915, § 7263.) The plaintiff contends that the objection, which seems to have been orally made, was unavailing because exceptions to depositions are required to be made in writing (Gen. Stat. 1915, § 7265), and save for incompetency or irrelevancy to be filed before the commencement of the trial. (Gen. Stat. 1915, § 7266.) The defendant could not be expected to make an objection to the deposition until it had been filed, and it must be presumed that it was not filed until after the trial was begun, if such presumption is necessary to sustain the ruling. The requirement that exceptions shall be in writing is doubtless intended to promote definiteness, and where the objection is based on the failure to file the deposition in time, and is sustained, the fact

Kyte v. Chessmore.

that it is orally made can work no prejudice to the adverse party. We find no ground of reversal in the rejection of the deposition.

3. While the defendant was upon the witness stand he was asked what had been recognized by the occupants as the division line between the two north quarters, and what he and those through whom he derived title had claimed as their west boundary during their occupancy. He answered—"The fence." The plaintiff objected to the questions as incompetent, hearsay, self-serving and not the best evidence, and moved to strike out the answers on the same grounds. The overruling of the objections and motions is complained of. It is true that the statement that the fence was recognized as the division line, or was claimed to be the boundary, partakes somewhat of the nature of a conclusion to be drawn from a number of component facts, which might with advantage have been brought out in detail, leaving the jury under the instructions of the court to determine whether they constituted a recognition or claim. However, in the situation presented, we think the question of what such recognition or claim involved was sufficiently simple so that the plaintiff suffered no prejudice from the evidence being admitted in that form—none at least that could not have been readily corrected by the elicitation upon cross-examination of the precise circumstances within the personal knowledge of the witness upon which he based his general statement. Other somewhat similar questions—not covering the same field, however—were asked and answered without objection. We do not regard the overruling of the objections that were made as justifying a reversal.

4. The plaintiff contends that there was no substantial evidence of an agreement that the fence should constitute the boundary. With respect to the two north quarters the following is the substance of the evidence bearing upon that question, the defendant being the witness:

"Q: Did they [the former owners of the two quarters] have a dispute in regard to the boundary line of their land? A. They had some dispute and they called out the county surveyor.

"Q. You may state to the jury what they did. A. They had some trouble and established the line and put up fences along about 1886 or 1887 and the line has been there ever since.

"Plaintiff moves the court to strike out the answer of the witness for the reason that it is a conclusion of the witness and no foundation has been laid, particularly that part 'established 1886 or 1887.'

"The Court: That part may be stricken out.

"Q. What did they do? A. After they got their dispute settled they put up a fence there.

"Q. Who built that fence? A. Well, my father and Mr. Constable, or some help he had hired there or some of the fence, I do not know just who put the fence up but it was established. . . .

"Q. Since the date of the agreement between your father and Dr. Constable what has been recognized as the division line between those tracts of land? A. The fence.

"Q. What has been recognized as the division line between those quarters of land by adjoining landowners since that time? A. The fence."

Where there is a dispute as to the dividing line the adjoining owners may by agreement establish a boundary which will be binding upon themselves and their successors in interest, regardless of whether or not it corresponds with the true location. (9 C. J. 230; 4 R. C. L. 126; see, also, 2 C. J. 137.) And it is said that the existence of such an agreement may be inferred from circumstances, such as the maintenance of a fence (4 R. C. L. 129) or long acquiescence. (9 C. J. 232; see, also, p. 242.) By the weight of authority, however,

"Where the intention was to establish the line according to the true boundary, and by mistake the parties agreed on a line which does not conform to such boundary, the line so agreed on is not conclusive, and the agreement may be set aside by either party unless equitable reasons exist for adhering to the erroneous line." (9 C. J. 237.)

The court is of the opinion that the evidence quoted was sufficient to justify submitting to the jury the question whether an agreement had been made by the former owners establishing the boundary as marked by the fence, irrespective of its correspondence with the line of the government survey.

The plaintiff contends also that the court erred in submitting to the jury the question whether the defendant's title to the strip in controversy had become unassailable by reason of its having been held by adverse possession for more than fifteen years. He asserts that, although it was shown that the defendant and his predecessors had for more than the limitation period occupied and claimed ownership of all the ground east of the fence, there was no evidence whatever that they had done so upon any other theory than that the fence stood upon

the section line. The only testimony on this phase of the matter, in addition to what has already been stated, was to the effect that the defendant and his predecessors had occupied, used and claimed up to the fence. In view of the entire record, the court is of the opinion that the question of adverse posses-. sion was properly allowed to go to the jury.

5. Several objections are made to the instructions. In referring to the period of limitations the trial court appears by inadvertence to have spoken of the action as having been begun on October 16, 1916, instead of October 16, 1915. No prejudice can have resulted, for the jury could not have found that the statutory period had expired between the dates named. Under the evidence, if the bar was available at the later date it was equally so at the earlier. Another instruction which is complained of merely followed the third paragraph of the syllabus in *Peterson v. Hollis*, 90 Kan. 655, 136 Pac. 258. Other objections to the charge relate to matters already discussed.

6. The plaintiff complains of the refusal of the court to give a requested instruction reading:

"If . . . during the fifteen years, or any part thereof, next preceding the commencement of this action, the defendant, though in possession of the strip in controversy, intended only to claim to the true west boundary line of his quarter sections, then his possession was not hostile or adverse, and such possession gave him no title to the strip in controversy in this case."

The rule there invoked is generally accepted (2 C. J. 139; 1 R. C. L. 732) and is followed in this jurisdiction. No question is raised as to its correctness, but the contention is made that the proposition involved is sufficiently covered by instructions that were given, reading thus:

"You are instructed that if you believe from the evidence that the fence which is claimed by the defendant to have been established as a boundary line was placed and constructed by the parties owning or occupying the land on either side thereof by the agreement of the parties merely for the convenience of using and working the land, and not for the purpose of marking the boundaries, then neither party would be bound by the existence of the fence as established there as an agreed boundary line or by adverse possession of the lands in controversy.

.    .    .    .    .    .    .    .    .    .    .    .

"You are instructed that although you may believe from the evidence that the fence dividing the subdivisions of land now owned by the parties to this action was constructed west of the true line, but that

the defendant and his grantors have been in possession of the tract of land now in dispute lying east of the fence for a period of more than 15 years next preceding the commencement of this action, yet if you believe, from the evidence that such fence was constructed under an agreement as to the location of the true line with the intention of placing it upon the true line, not with the intention of fixing a permanent boundary, but simply locating it upon the true line each party claiming up to the true line of said tracts then you are instructed the occupancy of such disputed strip by the defendant or his grantors would not constitute adverse possession until after the defendant or his grantors had notified the plaintiff or the parties under whom he claims titles to said disputed strip of land."

The first of these instructions hardly meets the issue, for it relates to a fence not intended to mark the boundary at all. While the language of the other is used with particular reference to the agreement, the court believes that it points out, sufficiently for the purposes of the case, the difference in effect between a claim of ownership up to a fence on the theory that it marks the true boundary, and such a claim made irrespective of that consideration.

7. The plaintiff urges that the same reasons that led the court to grant a new trial with respect to the south portion of the strip in controversy applied with equal force to the north portion. There was some similarity in the evidence applicable to each portion, but there was also enough difference so that the court may reasonably have been satisfied with the verdict in the one case and not in the other.

8. A new trial was asked on the ground of newly-discovered evidence, which was that of three brothers of the defendant, each of whom from 1907 to 1910 had owned an undivided interest in the Chessmore land which he had acquired by inheritance. Each of them, on his disposition being taken, gave a negative answer to the question whether he had ever claimed any ownership west of the true boundary line of the tract. As none of them was shown ever to have been in actual possession of the land, the testimony was not important.

The judgment is affirmed.