No. 28,447.

John A. Simon, *Appellee,* v. Mike Mohr et al., *Appellants.*

(273 Pac. 445.)

Opinion filed January 12, 1929.

*George McGill* and *Harry C. Castor,* both of Wichita, for the appellants.
*John W. Adams* and *Harvey C. Osborne,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action to recover the value of a hedge fence, alleged to be owned in common by plaintiff and defendants and to have been cut down and appropriated by defendants, and to have the hedge fence adjudged to be the boundary line between the land of plaintiff and that of defendants. There was a trial to the court. Extensive findings of fact were made, also conclusions of law, and judgment was rendered for plaintiff. Defendants have appealed.

Briefly, and so far as is here pertinent, the facts found are as follows: The parties claim title under James Morgan, who in 1875 owned the east three-quarters (480 acres) of a certain section of land in Sedgwick county. He conveyed the south half of this to his son, William Morgan, and the land directly north of that he conveyed to his daughter Malinda Parkinson a part, and to one Murray Myers the remainder. In 1880 Murray Myers, Malinda Parkinson and her husband, David Parkinson, and William Morgan, agreed upon what they thought was the dividing line between the

land of William Morgan on the south and the lands of Murray Myers and Malinda Parkinson on the north and planted a hedge on the line so agreed upon, with the intent that the hedge should be the dividing line between the properties. William Morgan continued to own the land conveyed to him by his father until 1913, and lived upon and occupied it until 1908, and later occupied it by tenants. During all that time, since the hedge was planted, he claimed to own the land south of the hedge, and was in the actual, exclusive, open and adverse possession of it. He claimed title to half of the hedge, repaired it, contributed to its upkeep, and from time to time cut posts from it. In 1913 he sold his land to the plaintiff, John A. Simon, and pointed out to him the hedge fence as the dividing line between his property and the land north of it. Since 1913 the plaintiff has been in the actual adverse possession of the land on the south of the hedge fence, claiming to own it and one-half of the fence, as did his grantor.

In 1893, William Morgan, David Parkinson and one James Siever made written application to the county surveyor to have the section in which this land was situated, and one other section, surveyed for the purpose of ascertaining and establishing the true section lines, half-section lines and quarter-section lines in the sections. The survey was made in May, 1893, by a deputy surveyor. The half-section line through this section by this survey was located fifteen feet south of the hedge fence at the east end thereof and three feet south of it at the west end, tending to show a strip of land three-quarters of a mile long, 15 feet wide at one end and 3 feet wide at the other, south of the hedge, as not in the land conveyed to William Morgan by his father's deed, but within the land conveyed by the deeds to Malinda Parkinson and Murray Myers. Some doubt as to accuracy of the survey as to this line arose by reason of the fact that the original government corners were not found. There was no evidence that this line as run by the surveyor was the same that was run by the government survey. Then the acreage of the section was short, and whether this shortage was in the south half of the section, or the north half, or equally divided, was not shown. If the shortage was in the north half of the section, the line would have been north of the hedge. After this survey William Morgan, as above stated, continued in the actual possession of the land up to and including half of the hedge fence, but he now did it intending to hold it adversely to the owners

of the land north of it, if, in fact, they had any title or right to possession of this narrow strip. On one or two occasions he proposed to buy this narrow strip from the owners of the land north of it. He did this seeking to avoid any controversy over the ownership and right to possession, and preferring, if the other parties did have any title to or rights therein, to acquire the same by deed rather than by adverse possession. But nothing came of these proposals. ·

As to the land north of this hedge fence: Murray Myers conveyed his part of the land to Jacob Fox in 1884, and in 1900 Fox conveyed it to David Parkinson, and in 1919 Malinda Parkinson and David Parkinson conveyed their land to the defendant, Mary Mohr. From the time the hedge was planted in 1880 until the survey in 1893 the owners of the land on the north regarded the hedge as the line between their land and the land south of them. After the survey they claimed, at least tentatively, to own the narrow strip south of the hedge, but made no effort to acquire possession of it until about 1925. They farmed or otherwise used the land from the hedge north, and contributed to keeping the hedge fence up by trimming it and otherwise caring for it, and cut from it a small quantity of fence posts and wood. In 1923 defendants pulled a few rods of the hedge, but this was done to give air to the house. In January, 1925, defendants cut a part of the hedge, and more in January, 1927. This appears to have been done under a claim of ownership. This action was brought soon thereafter.

Plaintiff claimed a half interest in the hedge fence and all the land south of it, on two theories: First, the agreement when the hedge fence was planted that it should be the division line, and long acquiescence in that agreement. Second, if defendants had title to any land south of the hedge plaintiff had acquired it by adverse possession. Naturally there was some confusion in these theories, both in the evidence and in the findings. This confusion gives rise to the argument of appellants.

We think it so happens in this case that the judgment of the trial court should be sustained on either theory.

As to the first of these: The rule is well settled in this state that when adjoining landowners who do not know the exact location of the line between their lands desire to construct a permanent partition fence on the line, go upon the premises and without a survey attempt to locate such line, and do so as nearly accurately

as possible, and construct a permanent fence thereon, with the understanding and agreement that the same shall be the partition line and fence between their properties, it becomes so by virtue of such agreement, although a later accurate survey may show the true line to be, one side or the other of the line and fence located and constructed by such agreement. (*Sheldon v. Atkinson*, 38 Kan. 14, 16 Pac. 68; *Steinhilber v. Holmes*, 68 Kan. 607, 75 Pac. 1019; *Parks v. Baker*, 81 Kan. 351, 105 Pac. 439; *Edwards v. Fleming*, 83 Kan. 653, 112 Pac. 836; *Kastner v. Baker*, 92 Kan. 26, 139 Pac. 1189; *Terrell v. Chessmore*, 94 Kan. 611, 614, 146 Pac. 1162; *Dean v. Evans*, 106 Kan. 389, 188 Pac. 436; *Kyte v. Chessmore*, 106 Kan. 394, 397, 188 Pac. 251; *Shafer v. Leigh*, 112 Kan. 14, 209 Pac. 830; *Bailey v. Brown*, 125 Kan. 149, 152, 266 Pac. 35.)

See, also, *McBeth v. White*, 122 Kan. 637, 253 Pac. 212, and *Blanford v. Biven*, 123 Kan. 269, 254 Pac. 1030.

This is what the parties did in this case. And at least until the survey in 1893 all parties acquiesced in such agreement and in the location of such line and fence. Even after the survey, although the owners on the north claimed the survey located the true line, they made no attempt to claim possession south of the fence for thirty years or more, and during all of that time the parties acquiesced in the agreement made at the time the hedge was planted in 1880. This case, therefore, falls within the principle controlling the cases hereinbefore cited.

It is true that one who by mistake as to the true boundary line occupies a strip of land owned by another, without the intent to take and hold land beyond the line, or to claim land which he does not own, does not acquire title by adverse possession. (*Scott v. Williams*, 74 Kan. 448, 87 Pac. 550; *Kinne v. Waggoner*, 108 Kan. 814, 197 Pac. 195.) But this doctrine is not applicable to the facts here for the reason that the owner on the south was in possession intending to hold it adversely even if a part of it, as the survey tended to show, was owned by those who owned on the north.

These conclusions necessarily require that the judgment of the court be affirmed. As to the second theory, it is argued that even if William Morgan acquired title to this narrow strip of land by adverse possession, after the survey in 1893, the title so acquired can be transferred only by a conveyance, citing *George v. Gist* (Ariz.), 263 Pac. 10, and allied cases, with the result that plaintiff

has shown title to be in one not a party to this action. This argument lacks merit for the reason that the conveyance to plaintiff was "according to United States survey." There is no showing that by the United States survey the line was south of the hedge—in fact, to give plaintiff full acreage the line would have to be north of the hedge.

The judgment of the court below is affirmed.