## No. 31,815

JOHN G. SCHLENDER and HENRIETTA SCHLENDER, His Wife, *Appellees*, v. JOSEPH MARETOLI, *Appellant*.

(37 P. 2d 933)

Opinion filed December 8, 1934.

*Joseph J. Dawes,* of Leavenworth, for the appellant.

*William H. Biddle* and *Malcolm McNaughton,* both of Leavenworth, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action for the recovery of real property, involving the ownership of a five-foot strip of ground where the owners of two adjacent lots both claim it.

The plaintiffs own lot 25 and the defendant lot 24 in a certain block in an addition to Leavenworth, being conveyed to each by no other description than lot number. A division fence between the two lots had been constructed by the former owner of lot 24 in 1897 and was there when the defendant purchased lot 24 in 1904, and remained in the same place until 1932 when defendant removed it east about five feet to a line shown by surveys to be the true dividing line between the two lots. The plaintiffs, owners of lot 25, which was east of lot 24, then brought this action to recover this five-foot strip taken by the defendant by the removal of the dividing fence.

The case was tried by the court without a jury, and the court found in favor of the plaintiffs, that they were the legal and equitable owners of the strip in controversy and entitled to the possession of the strip of land up to the fence line as it had existed prior to the time the defendant removed it shortly before the bringing of this action. From this ruling the defendant appeals.

The evidence shows that plaintiffs had been the owners of lots 26 and 27, both east of lot 25, since 1887, and had a survey made and stakes driven at the corners about that time and built the fences on those lots accordingly. About 1904 they purchased lot 25 and continuously used it up to the division fence, and about fifteen years before this action was commenced the plaintiffs repaired or rebuilt the south half of this division fence and the defendant the north half of it, leaving it in exactly the same position it had been prior thereto. Both parties regarded the fence as being on the dividing line, and each used the ground up to the fence on their respective sides.

About 1905 or 1906 the plaintiffs extended across the north, or front end, of lot 25 the same kind of a picket fence as they had on the north ends of lots 26 and 27. Defendant saw it being built. Plaintiff, John G. Schlender, testified that in building this fence from the corner of lot 26 to the corner of lot 24, across lot 25, he had to cut off about a foot of one of the two twenty-foot scantlings because they reached about that far beyond the division fence between lots 24 and 25 and that the defendant was present when he did so, and that he said to the defendant:

"'I'm a little short here, but I ain't going to make a fuss about a foot or two; we will leave the fence where it is.' Maretoli didn't say nothing about it; he said it was all right."

The defendant positively denied ever having such a conversation with this plaintiff. This is the main conflict in the testimony.

The reason for the defendant moving the dividing fence when he did was because of a recent survey, which indicated that the real dividing line between the two lots was five feet east of the old fence. This and another partial survey seem to agree, but proof of the required notice to other lot owners was not sufficient, which appellant frankly admits makes it probably lack the force of an official survey. After this survey the defendant demanded the removal of the division fence to the line indicated by the survey, and after the refusal of the plaintiffs to agree to such removal, defendant removed the fence, and plaintiffs brought this action to recover the strip of land up to the original fence line. Plaintiffs prevailed.

The appellant urges one specification of error, viz., that the judgment was contrary to the law and the evidence. It is unquestionably true that both parties throughout these many years thought the fence to be on or near the true boundary line. Both plaintiffs and the defendant so testified. Appellant maintains that unintentional encroachment, however long continued, through mistake, inadvertence or ignorance, cannot constitute such adverse possession as will ripen into title, citing *Shanline v. Wiltsie,* 70 Kan. 177, 78 Pac. 436; *Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836; *Kinne v. Waggoner,* 108 Kan. 814, 197 Pac. 195; *Wiburg v. Stevenson,* 134 Kan. 530, 7 P. 2d 512, and other decisions to that effect generally.

The first case was the use of a wrong strip of land for road purposes by mistake, and it was held that such use, however long continued by misapprehension, will not operate to effect an abandonment of the public easement over the true course or create by prescription or limitation a right of way over the tract actually used for travel.

The second case gives a concise definition of adverse possession in the following words:

"The real test as to whether or not possession of real estate beyond the true boundary line will be held adverse is the intention with which the party takes and holds the possession. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title, that fixes the character of the entry and determines whether the possession is adverse." (Syl. ¶ 1.)

It may here be proper to say that plaintiffs plead title to the strip in the case at bar both by adverse possession and by agreement and acquiescence. The last two cases cited by appellant indi-

cate the latter as a condition to or a modification of the strict requirements of the former.

The third case above cited was where the boundary-line fence between two farms had for many years been amicably regarded as the correct boundary line of the two farms, and the encroaching owner long possessed and enjoyed the strip of land between the true boundary line and the supposed boundary line, and the owner of the land encroached upon had laid no claim thereto, and it was held that—

" . . . such facts are not sufficient to give rise to a claim of right by adverse possession in favor of the encroaching owner, where there was no evidence that the boundary line had been fixed by agreement, and when there was no evidence of the encroaching owner's intention to claim adversely to his neighbor, and no evidence that his neighbor encroached upon had notice of such adverse claim." (Syl. ¶ 4.)

This case differs from the one at bar because of the evidence of the fixing, by agreement, of a boundary line. So there may be an agreement regarding the location of the boundary line which may control, instead of adverse possession controlling.

The fourth case cited by the appellant is strong upon the question of adverse possession, but it recognizes the way of fixing boundary lines by agreement in the following quotation from the opinion:

"The court further found that plaintiff had not been in the adverse possession of the strip of land in question for a period of fifteen years, and therefore had not acquired title by adverse possession. Appellant argues that this finding is in conflict with the finding made by the court that the occupant of each property used the same to the fence line. This contention cannot be sustained. Here there is no showing of an agreement that the line of the fence was the line between the properties." (p. 531.)

If adverse possession were the only point involved in this appeal, we might readily recognize the force of appellant's argument and reasoning, but as the last two cases cited above specifically make an exception of cases where the evidence shows an agreement between the parties, then such agreement must control.

In the case of *McBeth v. White*, 122 Kan. 637, 253 Pac. 212, it was held:

"An owner of about thirty acres of land sold part of it to another. The vendee made it a condition of his purchase that the line between them be definitely established. A surveyor was called in, who measured the land to be sold, set stakes at the corners, and laid out the line between the part sold and the part not then sold. The parties then agreed that the line so laid out should be the line between them, and they built a partition fence thereon.

The vendee took possession of, and claimed to own, the land purchased up to this fence. *Held,* the line on which the fence was built became the true division line between the tracts of land, binding upon the parties and their grantees, although a later survey of the tract then retained by the vendor indicated that the line should have been a few feet from where it was established." (Syl.)

In *Simon v. Mohr,* 127 Kan. 401, 273 Pac. 445, it was held:

"When adjoining landowners, not knowing the exact location of the line between their lands, desire to construct a permanent partition fence on the line, go on the premises, and without a survey attempt to locate such line, and do so as accurately as possible and construct a permanent fence thereon, with the understanding and agreement that the same shall be the partition line and fence between their properties, it becomes so by virtue of such agreement, although a later survey may show the true line to be one side or the other of the line and fence located and constructed by such agreement." (Syl.)

The trial court evidently gave credence to the testimony of the plaintiff, John G. Schlender, as to the agreement between him and defendant, to consider and regard the old fence as being on the dividing line between lots 24 and 25, notwithstanding the conflict in the testimony when the defendant denied it.

There was sufficient evidence to sustain the finding of the trial court thereon, and under such circumstances it is the uniform rule that such finding cannot on appeal be disturbed. (*Johnston v. Wear,* 110 Kan. 237, 204 Pac. 141, and *Baldwin v. Soldiers' Compensation Board,* 117 Kan. 129, 230 Pac. 82.)

We find no error in the rulings and judgment.

The judgment is affirmed.