(627 P.2d 1140)

No. 51,458

RUSSELL MARTIN, *Appellant,* v. THELMA HINNEN and JAMES E. HIN-
NEN, As Joint Executors of the Last Will and Testament of
Ralph L. Hinnen, Deceased, *Appellees.*

Opinion filed May 8, 1981.

*Jack N. Turner,* of Turner Law Offices, Chartered, of Wichita, for appellant.

*James B. McKay, Jr.,* of McKay, McKay & Hargrove, of El Dorado, for ap-
pellees.

Before JUSTICE HOLMES, presiding; MEYER, J.; and HARRY G.
MILLER, District Judge Retired, assigned.

MILLER, J.: This case arose as a quiet title action between
adjoining landowners involving a strip of pasture land in Butler
County. The trial court entered judgment quieting the title to the
disputed strip of land in the defendant.

On appeal, this court reversed and remanded for further find-
ings of fact and conclusions of law on the grounds that it could
not, on the basis of the record, ascertain on which of several
alternate theories the trial court had based its decision in favor of
defendants or the evidence supporting such theory. *Martin v.
Hinnen,* 3 Kan. App. 2d 106, 590 P.2d 589 (1979).

Accordingly, the trial court made further findings of fact and
conclusions of law, and on August 14, 1979, entered judgment
again in favor of defendants on the basis of an implied agreement
between plaintiff and Ralph L. Hinnen that the fence built by
them constituted the boundary line between their properties.
Thus, any issue as to title by adverse possession or by express
agreement has now been ruled out of the case.

The facts essential to a determination of the remaining issue are

not in dispute. At the time of filing the action, plaintiff was the owner of Section 8, Township 24 South, Range 6 East of the 6th P.M., in Butler County, and Ralph Hinnen was the owner of Section 7 which lies immediately West of Section 8. The two sections share a common north-south boundary approximately one mile long. Plaintiff acquired Section 8 in 1970, and Ralph Hinnen acquired a one-half interest in Section 7 in 1944 and the other one-half in 1970. During the pendency of this action, Ralph died and his executors have been substituted as parties defendant.

A fence has been situated in its present location since 1928. It extends in a North-South direction from a point 133.30 feet east of the true line on the north to a point 156.0 feet east of the true line on the south, as shown by the survey hereinafter referred to. The tract in dispute is that part of Section 8 lying between the fence on the east and the west line of section 8 as shown by the survey, consisting of 17 acres more or less.

In the spring of 1972, a grass fire destroyed the fence. Ralph Hinnen contacted plaintiff on the phone and asked if plaintiff would be interested in sharing the cost of a survey before rebuilding the fence. Plaintiff declined to do so, and the fence was therefore rebuilt in April of 1972, at the same location where it had been.

At about the same time, Ralph Hinnen ordered a survey of the south line of Section 7. This survey, completed about two months later, revealed that the south end of the rebuilt fence was located 156.0 feet east of the true corner of Section 8.

Shortly after this survey was completed, plaintiff observed the surveyor's stake west of the south end of the fence. Upon being informed about it by the county engineer, he ordered a survey in June of 1972, after informing Hinnen of his plans and his willingness to pay in full for a new fence on the true north-south line. After the survey was completed, plaintiff commenced construction of a new fence on the line established by the survey. When Hinnen objected to the construction of the new fence, construction was halted and this action resulted.

The trial court's conclusion was that all owners of the two sections had acquiesced for many years in the fence as being the division line between the two properties, and that plaintiff had likewise acquiesced since 1970 until the time of the grass fire, and

that notwithstanding the absence of any "specific or express agreement between Ralph Hinnen and the plaintiff, the conduct of these parties in rebuilding the fence at the same location after such grass fire, substantially amounted to an implied agreement between them that such fence constituted the boundary line between their properties."

The narrow issue now before us, then, is whether under the facts of this case, the requisite intent and meeting of the minds essential to an agreement may be implied from such conduct of the parties.

It is well settled that adjoining landowners, under proper circumstances, may establish a boundary line between their properties by agreement, express or implied. Plaintiff contends, however, that mere acquiescence by him in the fence line in ignorance of the fact that it was not located on the true section line cannot be the basis for an implied agreement that such line is to constitute the boundary line regardless of the true survey line.

The record is clear that the fence had stood in the same spot for many years prior to the time plaintiff acquired his property. During these years, and prior to its destruction, it was never a source of dispute or controversy. There is nothing in the record to show that either of the parties here, or their predecessors in title, were ever aware that the fence was not on the true section line, or that their acquiescence to the fence was based on anything more than the mistaken assumption that it stood on the true line and was consistent with their deeds of record, a mistake of fact that was not discovered until defendant had Section 7 surveyed.

In *Fritzler v. Dumler,* 209 Kan. 16, 495 P.2d 1027 (1972), the contention was made that a boundary line had been established by implied agreement and acquiescence. The trial court held that there was no agreement establishing a tree line as the boundary marker since there was no dispute or question between the parties about the boundary. In affirming the lower court's decision, the court stated:

"With respect to plaintiffs' claim of acquiescence, that term, as applied to a boundary line controversy, is defined as a consent to the conditions and involves knowledge of them." 209 Kan. at 22.

In commenting on the above statement, this court in *Martin v. Hinnen,* 3 Kan. App. 2d at 111, stated:

"This statement, as we view it, is consistent with the long line of earlier cases.

Nothing can be inferred from acquiescence in a boundary unless the acquiescing party *knew* his land was being encroached upon, or at least that the line was in dispute."

In commenting on *Fritzler,* this court also stated:

"The key element missing in that case was a dispute as to where the boundary should be, so that it could be said that an agreement was reached to resolve it." 3 Kan. App. 2d at 111.

This is in accord with the general rule that one of the requisites necessary to the validity of an implied agreement establishing a boundary line is that the line sought to be thus established must be doubtful, uncertain or in dispute (12 Am. Jur. 2d, Boundaries §§ 78, 79; *Kyte v. Chessmore,* 106 Kan. 394, 188 Pac. 251 [1920]).

This court in its previous opinion, after analyzing the Kansas cases on the subject, recognized that a boundary may be established by implied agreement, but held "there must be some evidence from which an agreement may be inferred beyond simple acquiescence in the parties' mutual mistake." 3 Kan. App. 2d at 108.

In those cases where an implied agreement has been upheld, the Court has found other factors involved beyond long acquiescence, such as an uncertain line marked by the parties together (*Moore v. Bayless,* 215 Kan. 297, 524 P.2d 721 [1974]), or a line established by a survey after a dispute (*Kyte v. Chessmore,* 106 Kan. 394), or a definite line pointed out to the adjoining landowners at the time of their purchases (*Blanford v. Biven,* 123 Kan. 269, 254 Pac. 1030 [1927]), or a line established by a survey when land was purchased followed by the construction of improvements thereon (*Beams v. Werth,* 200 Kan. 532, 438 P.2d 957 [1968]). No such other factors of this kind are found here.

In the situation here, where the fence line had stood for so many years, unchallenged and unquestioned as the boundary line, and plaintiff had no reason to be suspicious of its location, an inquiry, without more, by the adjoining landowners as to whether plaintiff would be interested in sharing the cost of a survey before rebuilding the fence could only reasonably be construed as a suggestion made as a matter of precaution. It was not sufficient to import notice to plaintiff of the existence of a dispute or a valid doubt over the location of the boundary line.

Under such circumstances, the conduct of the plaintiff in declining to join in the cost of a survey and in rebuilding the

fence at the same location did not amount to an implied agreement that the fence line was to constitute the boundary line rather than the true section line.

Reversed.